## HICKEY ET AL., RESPONDENTS, v. PARROT SILVER & COPPER CO., APPELLANT.

(No. 1,549.)

(Submitted January 17, 1901.   Decided March 21, 1901.)

*Receivers — Mines — Operation — Injunction — Sufficiency of Bond—Lease Expiring Before Final Adjudication—Ascertainment of Damages—Preservation of Rights—Petition by Party in Possession.*

1.  Certain parties claiming title to a mine sued for an injunction restraining certain others and their lessee from working the mine. The lessee's estate would terminate before a final adjudication of the matter could be had, and the restraining order sought would do him great damage. *Held,* that a receiver could not be appointed on the ground that the bond which would be required on granting the restraining order, suit on which would be the lessee's only remedy, would not afford such lessee adequate protection, since it would be presumed that the bond required would be sufficient to protect the lessee from any loss occasioned by such order.

2.  The Court would not appoint a receiver because the damages the lessee would suffer by reason of such restraining order would be difficult of ascertainment and proof.

3.  Under Code of Civil Procedure, Sec. 950, Subd. 6, authorizing courts to appoint receivers in all cases "where receivers have heretofore been appointed by the usages of courts of equity," the lessee in possession of a certain

mine, the operation of which was enjoined pending the settlement of a dispute as to title between the lessor and others, was not entitled to the appointment of a receiver, with power to remove ore, on the ground that his lease would expire before final adjudication, and hence be rendered valueless by the injunction, since the receivership was not necessary to the preservation of the rights of the parties.

4. Under *Code of Civil Procedure,* Sec. 950, Subd. 6, a receiver will not be appointed in an action for an injunction against trespasses with power to take away the substance of the estate, on the ground that the defendant will enjoin or has enjoined the plaintiff in possession from extracting ore from the property.

5. A party in possession of, and asserting title to, mining property may not of his own volition over the objection of the party likewise asserting title thereto surrender the possession to the court for operation by it—through a receiver—of the property.

6. The power to appoint a receiver is to be exercised with conservatism and caution ; a strong showing should be made that the appointment is necessary to the preservation of the thing or right in controversy,—especially is this true when the court is invited by one of the parties to embark property seized by it through its receiver in industrial enterprises, and expose it to the hazard incident to the conduct of such a business.

7. A lessee is no more entitled to have a receiver appointed than is his landlord.

*Appeal from District Court, Silver Bow County; William Clancy, Judge.*

ACTION by Michael Hickey and others against the Parrot Silver & Copper Company. From an order appointing a receiver of certain property claimed by both parties, defendant appeals. Reversed.

*Mr. William Scallon, Mr. J. K. MacDonald* and *Mr. T. J. Walsh,* for Appellant.

*Messrs. McHatton & Cotter* and *Mr. James M. Denny,* for Respondents.

The petitioner in this case was entitled to the appointment of a receiver under the peculiar facts of the case, and to protect his interest as lessee. His rights as lessee could not be protected in any other way, and were a receiver refused he would be irreparably injured and his property rights as such lessee entirely taken from him and destroyed. It is an elementary principle of equity, which requires no citation of authorities in its support, that a court of chancery has full power in any

action in which it has jurisdiction of the subject matter and the party to make any order necessary to protect the rights of the parties and to preserve the matter in dispute. In this case there is and can be no question as to the jurisdiction of the court as a court of equity over the subject matter of the suit and the parties thereto. The complaint seeks purely equitable relief; it is an appeal to the court to exercise its equitable powers for the protection of the plaintiffs. Where the equity jurisdiction of a court is invoked for the protection of the rights of the plaintiffs it has full authority over the entire suit and to determine all questions which may arise therein and be necessary for determination, whether they be legal or equitable. In other words, where the exercise of the equity jurisdiction of the court can properly be invoked for the protection of any right, and that is the purpose of the action, it will determine all legal questions which may arise in the action and administer the equitable relief. It is no objection to the jurisdiction of the court, as a court of equity, to say that it may not grant the relief prayed for in this action because the defendant might raise a dispute as to the title of the plaintiff. The court well knows that in every instance in which equity is appealed to to grant an injunction for the protection and preservation of property, an issue may be raised as to the plaintiff's legal title and that a determination of such issue may be necessary to the granting of the ultimate equitable relief to which the plaintiff is entitled, but that in every such instance the court of equity has absolute and complete jurisdiction to determine such questions, without the aid of a jury, and to enter such decree as may be in consonance with the rights of the parties.

While the distinction in forms of actions has been abolished in this state, it is only as to form that the abolition has occurred; the distinction in character is maintained as clearly as ever, so that, while an action may be commenced in the courts of this state by filing a complaint containing a statement of the facts relied upon and without indicating whether the action is brought at law or in equity, the court will apply the

principles of law or equity according to the nature of the action itself. If this action should be considered in its essential character as one to quiet title, or to remove a cloud from the title of the plaintiff instead of an action for an injunction, it would nevertheless be an action in equity, and the court, in its trial and determination, would follow the practice in equity and apply equitable principles thereto. Suits to quiet title and to remove clouds from title are among the most numerous kinds of actions which courts of chancery have heretofore entertained. That an action by a party in possession to quiet his title to real estate is one in equity, is amply attested by the following cases: *Mantle* v. *Noyes*, 5 Mont. 274; *Mantle* v. *Noyes*, 127 U. S. 348; *Doe* v. *Waterloo Mining Co.*, 43 Fed. 219-221; *Fitzgerald* v. *Clark*, 17 Mont. 100, 139; *Mercer Mining Co.* v. *Freeman*, 7 Cal. 317; *Castroe* v. *Barry*, 79 Cal. 443; *Hammer* v. *Garfield Mining Co.*, 130 U. S. 291-296; *Bullion-Beck Co.* v. *Eureka Hill Mining Co.*, 11 Pac. 515; *Del Monte Mng. and Milling Co.* v. *Last Chance M. and Milling Co.*, 18 Sup. Court Rep. 895; *Walrath* v. *Champion Mining Co.*, 18 S. C. Rep. 909; *Waterloo Mining Co.* v. *Doe et al.*, 82 Fed. 45; *St. Louis Mng. Co.* v. *Montana Co.*, 58 Fed. 129; *Cassidy* v. *Sullivan*, 64 Cal. 266; *Harlan* v. *Challen*, 110 U. S. 15; *Grand Rapids I. R. Co. et al.* v. *Sparrow et al.*, 36 Fed. 210; *Taber* v. *Cook*, 15 Mich. 322; *Larkin* v. *Wilson*, 28 Kansas 513; *Harding* v. *Fuller*, 144 Ill. 308; *Allen* v. *Hanks*, 136 U. S. 361; *Frost* v. *Spitley*, 121 U. S. 556.

That the defendant in this case is not entitled to a trial by jury, see the above cases; also the following: *In re Burrows*, 7 Pac. 148; *Hopkins* v. *State Capitol Commission*, 16 Cal. 253; *Weil* v. *Kune*, 49 Mo. 158; *Brandt* v. *Wheaton*, 52 Cal. 430; *Reynolds* v. *Lincoln*, 71 Cal. 186; *Benson* v. *Shortwell*, 87 Cal. 60; *Lynch* v. *Metropolitan Ry. Co.*, 11 L. R. A. 287; *Wiggins* v. *Johnston*, 30 L. R. A. 754; *State* v. *Saunders*, 18 L. R. A. 646; *Hall* v. *Armstrong*, 20 L. R. A. 366.

Subdivision 6 of Section 950 of the Code of Civil Procedure provides for the appointment of a receiver in all other cases

where receivers have been heretofore appointed by the usages of the courts of equity and means simply this: That in all cases in which the courts have heretofore, in the exercise of the general chancery powers, found it necessary or desirable to appoint a receiver in order to preserve the rights of the parties, or in which they may hereafter find it necessary to exercise that authority, they have a right to appoint a receiver. (*Bateman* v. *Supreme Court*, 54 Cal. 289.) It is certainly more in accord with the principles of equity that a receiver should be appointed to mine the ore and preserve the proceeds for the party entitled thereto, rather than that an injunction should be issued which would effect an entire destruction of the leasehold rights of the plaintiff Arthur P. Heinze, and that he should be left to pursue an inadequate remedy at law, by means of a suit against the defendant seeking to recover the damages which he would sustain thereby. (Pomeroy, Equity Jur. Sec. 1357; *Palmer* v. *Israel,* 13 Mont. 213.)

An injunction is a necessary concomitant of an order appointing a receiver. That a court, upon an application for an injunction, may appoint a receiver, is well established. (*Whitney* v. *Buckman,* 26 Cal. 448; *Halawacke* v. *Bowman,* 8 N. W. 102; *Tregaskis* v. *The Judge,* 11 N. W. 293.) Courts have even, in cases where they have granted injunctions against both parties to an action, afterwards appointed a receiver therein, as the cases hereafter cited will show.

The authority of the court to preserve the property, the subject of litigation, pending the action until final judgment, and then apply it as justice may require, is too manifest to admit of question, and such authority should be exercised where it appears there is reasonable ground to believe that the plaintiff may recover and the interference of the court is necessary to protect the rights of Arthur P. Heinze. (*Crecroft* v. *Morehead,* 67 N. Car. 422; *Morris* v. *Willard,* 84 N. Car. 283.)

The jurisdiction exercised by a court of equity in administering relief by the extraordinary appointment of a receiver *pendente lite* is a branch of their general preventive jurisdic-

tion, being intended to prevent injury to the thing in contro-
versy and to preserve it for the security of all parties in inter-
est, to be disposed of as the court may finally direct.   (High
on Receivers, Sec. 3; *Deep River Gold Mining Company* v.
*Fox,* First Morrison's Mining Reports, 296; *Parker* v. *Parker,*
82 N. C. 165.)   This doctrine is also recognized by the federal
court in the case of *Thomas* v. *Natnahala Marble and Talc
Company,* 58 Fed. 485, where the court said that it was in
conformity to the principles of equity as administered every-
where.   See also *Smith* v. *Jones,* 101 N. Car. 360; *Hell* v.
*Taylor et al.,* 22 Cal. 191; *Weise* v. *Welsh,* 30 N. J. Eq. 431.
See also the following authorities, which we submit as support-
ing the court's right to make the order appealed from:  *Harris*
v. *Reynolds,* 13 Cal. 518; *Reynolds* v. *Harris,* 14 Cal. 676;
*Abel* v. *Lowe et al.,* 17 Cal. 234; *Duncan* v. *Campbeau,* 15
Mich. 414; *Goodale* v. *District Court,* 56 Cal. 26; High on
Receivers, Secs. 556-558-576; Pomeroy, Equity Jur., Secs.
1331-1333; *Orphan Asylum* v. *McCartee,* Hopkins Chancery,
N. Y. 427; 15 Am. & Eng. Enc. Law, p. 605; High on Re-
ceivers, p. 17; *Elk Ford Oil and Gas Co.* v. *Foster,* 99 Fed.
495; Smith on Receivers, Sec. 38; *Nevada Sierra Oil Co.* v.
*Home Oil Co.,* 98 Fed. 673; High on Receivers, Sec. 4.

Under the peculiar circumstances in this case the appoint-
ment of a receiver is the only means whereby the rights of
Arthur P. Heinze can be preserved and protected.   (*Appeal of
Rankin et al.,* 16 Atl. Rep. 82.)

On the question of the practice of courts of equity in the
matter of appointing receivers, we call the court's attention to
the cases of the *Butte & Boston Mining Co.* v. *John F. Forbis,*
and others, in the United States Court, Ninth Circuit, District
of Montana; *Nevada Sierra Oil Co.* v. *Home Oil Co.,* 98 Fed.
673; *Elk Ford Oil & Gas Co.* v. *Foster,* 99 Fed. 495.

MR. JUSTICE PIGOTT delivered the opinion of the
Court.

This is an appeal by the defendant from an order of the
district court of Silver Bow county made on the 16th day of

May, 1900, appointing one McLaughlin receiver of so much of the Nipper lode mining claim as lies west of a plane drawn through a point on the north side line of that claim 205 feet northwesterly from the southeast corner of the Little Mina lode mining claim, and parallel with the vertical planes of the end lines thereof, together with all the veins and ore bodies belonging to that part of the Nipper, including all extralateral rights, and authorizing and directing him to work and mine such part and cause a reduction of the ores by him extracted therefrom.    The appointment was made on the petition of Arthur P. Heinze, one of the plaintiffs, and after the issues were framed in the action.

.  The state of the pleadings at the time the petition was filed was this:  The complaint stated that the plaintiffs, other than the Heinzes, were the owners of thirty-one undivided thirty-sixths of the Nipper lode mining claim; that they had leased to F. Augustus Heinze their interest and had agreed to sell it to him upon the fulfilling of certain conditions, and that he was entitled meanwhile to mine the property; that F. Augustus Heinze assigned or sublet to Arthur P. Heinze, who, at the time the complaint was filed, was and for a long time has been in and entitled to the possession of the interest mentioned; that the defendant had wrongfully entered into the Nipper lode claim by means of a shaft and underground workings and had mined and carried away ores therein contained, and was then so engaged and threatened to and, unless restrained by the court, would from day to day continue to enter upon the claim and mine, extract, and convert them to its own use; that the claim is valuable almost entirely for the ores of copper, gold, and silver, which it contains; that the plaintiffs have no means of knowing the amount and value of the ores which had already been extracted by the defendant, and would be unable to ascertain the amount and value which the defendant would take away in the future unless enjoined.    The relief prayed for was an injunction against the threatened trespass.

By answer the defendant admitted that it had entered within

the vertical planes of the boundaries of the Nipper lode mining claim, but denied that it had removed or threatened to remove any ore therefrom, alleging that its operations had been confined to developing the vein so as to determine the true apex thereof. It denied the assignment or subletting to Arthur P. Heinze, and for an affirmative defense alleged ownership of the Little Mina lode claim adjoining the Nipper on the north, and averred that it was engaged in the prosecution of development work on the vein, the apex of which is within the Little Mina lode claim; that the vein on its dip so far departs from the perpendicular as to pass beyond the vertical planes of the south side line of the Little Mina lode claim and to enter the Nipper claim. It alleged that it had not entered within the Nipper lode claim upon any vein which it had not followed downward on the dip from its apex within the Little Mina. These allegations were put in issue by the replication filed September 20, 1899, which seeks a decree quieting title in plaintiffs.

On the 5th day of March, 1900, the plaintiff Arthur P. Heinze filed his petition for the appointment of a receiver, setting forth in substance these alleged facts: Under a certain lease the petitioner is in possession of an undivided thirty-one–thirty-sixths of the Nipper lode mining claim and is engaged in mining the ores from the veins within the claim, and is entitled to remain in possession and mine and extract the ores until the 12th day of July, 1901, on which day his lease will expire. The defendant, asserting ownership of the Little Mina lying to the north of the Nipper, has commenced an action against F. Augustus Heinze and the Montana Ore Purchasing Company, alleging that there is a vein which has its apex in the Little Mina claim and which in its downward course departs into the Nipper claim and asserts that the part of the Nipper vein lying between vertical planes, one drawn downward through the westerly line of the Little Mina and one through a point 205 feet northwesterly from the southeast corner of the claim, measured along its south line and extended in their

own direction to an intersection with the Nipper vein within
the Nipper claim, belongs to the defendant and is a portion
of the vein which has its apex in the Little Mina claim.  The
assertions so made by the defendant are made in bad faith and
fraudulently and in collusion with the Boston & Montana
Consolidated Copper & Silver Mining Company, the Butte &
Boston Consolidated Mining Company, the Anaconda Copper
Mining Company, the Colorado Smelting & Mining Company,
the Washoe Copper Company, the Amalgamated Copper Com-
pany, the Standard Oil Company, Lewisohn Bros., Marcus
Daly, H. H. Rodgers and others and as a part of the conspiracy
entered into by the defendant and the corporations and persons
mentioned for the purpose of preventing the owners of the
thirty-one–thirty-sixths interest in the Nipper lode claim,
and the petitioner, from mining the ores therefrom,
and for the purpose and with the intent by means
of false testimony and affidavits to obtain an injunc-
tion preventing the mining of the ores, with the inten-
tion and for the purpose, and by the means so alleged, the de-
fendant is threatening to obtain, and "very likely" will obtain,
an injunction against the petitioner enjoining him from min-
ing the ores from the Nipper claim and vein "by reason of the
said matters and the means which it and its co-conspirators
will employ, and by reason of the fact that it is quite usual for
the courts to grant an injunction where one party claims that
another is trespassing upon a vein belonging to it, and the
testimony offered on the hearing of an application for an in-
junction is contradictory or conflicting; and that said Parrot
Silver & Copper Mining Company is now threatening to and
will, as plaintiff is informed and believes, within a short time
institute an action or proceeding against him for the purpose
of preventing him, by means of a restraining order or injunc-
tion, from mining or taking away any of the ores from said
portion of said Nipper vein lying between the planes aforesaid;
and that by reason of the conspiracy existing between said
Parrot Silver & Copper Company, and the other companies

and persons hereinafter mentioned, and by reason of the fact
that it and they will procure witnesses to wrongfully, fraudu-
lently and falsely testify that in their opinion the said Nipper
vein has its apex for a portion of its length in the Little Mina
claim, and by reason of the fact that the location and owner-
ship of the said Nipper vein cannot be finally determined in
such a proceeding, and the court may feel obliged, under its
rules of practice, to enjoin this plaintiff from mining or carry-
ing away any of the ores therefrom;" if such action be brought,
as petitioner is informed and believes it will be, it cannot be
tried for several years, in consequence of which the title of the
owners of the thirty-one--thirty-sixths in the Nipper
lode claim to the vein and ore will be brought into
and held in dispute by the defendant, and petitioner
will be enjoined from mining or carrying away any
of the ores during the term of his lease, whereby the lease
will be rendered valueless to him.    The claims and pretenses
of the defendanat to the vein and ores are without foundation
in right or equity and are entirely fraudulent, "and are put
forth and will be maintained, not for the purpose of protecting
any right to said property, but for the purpose of irreparably
injuring this plaintiff and destroying his business and busi-
ness prospects, so far as it can, and also in an attempt to con-
fiscate and acquire the property and property rights of plain-
tiff's associates, and particularly of F. Augustus Heinze and
the Montana Ore Purchasing Company in the Butte district."
The Montana Ore Purchasing Company owns several mines
and interests in mining claims and is engaged in carrying on
a general mining and smelting business in Silver Bow county;
and it and the Johnstown Mining Company are owners of a
large smelting and reduction plant used for the treatment of
ores obtained from other persons.    F. Augustus Heinze,
brother to petitioner, and petitioner are largely interested in
the Montana Ore Purchasing Company and its affairs.    In
1897 the Boston & Montana Consolidated Copper & Silver Min-
ing Company, its officers and agents, and Lewisohn Brothers

and others, as petitioner is informed and believes, entered into an unlawful conspiracy against the plaintiff, his brother, the Montana Ore Purchasing Company and those associated with them in the ownership of mining property and in the business of .smelting and reducing ores in Silver Bow county, with the purpose and intent and with the express agreement and understanding to bring numerous fraudulent and unfounded actions against them respecting their property and property rights, and by means of false and fraudulent statements and testimony to injure and destroy their business reputation and credit, and to prevent them from exercising and enjoying their property and rights and obtain injunctions and harass and annoy them with expensive litigation.   Thereafter the Butte & Boston Consolidated Mining Company, its officers and agents, joined in the conspiracy for the purposes mentioned, and for the further purpose of obtaining the property of the Montana Ore Purchasing Company and the Heinzes at a great sacrifice and irreparable loss to them.   The Boston & Montana Consolidated Copper & Silver Mining Company and its co-conspirators have continuously and in pursuit of the conspiracy brought numerous unfounded actions against the Montana Ore Purchasing Company and the Heinzes, and have obtained injunctions against them preventing them from mining the ores from their property, and many of the actions are still pending and cannot be finally determined for a long time.   In pursuit of the said purpose and in the execution of the conspiracy the companies named, their officers, agents, and representatives, have published false and malicious charges against the Montana Ore Purchasing Company, its officers and agents, and against the Heinzes touching their integrity and business dealings and affecting their business and financial standing, designed to bring them into disrepute and to accomplish their business failure and ruin.   Marcus Daly of the Anaconda Copper Mining Company, Rodgers and Rockefeller of the Standard Oil Company, and others, have, as the petitioner is informed and believes, formed a trust between the Anaconda Copper Mining

Company, the Washoe Copper Company, the defendant Parrot Silver & Copper Mining Company, and the Colorado Smelting & Mining Company for the purpose of controlling the mining and reduction of ores in Silver Bow county, and acquiring and controlling the ownership of the valuable mining properties situated therein, and have caused to be formed a trust corporation called the Amalgamated Copper Company, under the laws of the state of New Jersey, which corporation was so organized for the purpose of avoiding any supervision and control of the same by the state of Montana, and so that it might claim not to be governed by the laws of Montana. As plaintiff is informed and believes, one of the purposes of the Amalgamated Copper Company is to have the Washoe, Parrot, Colorado and Anaconda Companies, and their properties and property rights in Montana, transferred to it or to have the stock of these corporations transferred to it and owned and controlled by it; and as plaintiff is informed and believes, Daly, Rodgers, and Rockefeller own a majority of the capital stock of the Amalgamated Copper Company and control the corporation, and also own a large majority of the capital stock of the Anaconda Copper Mining Company, the Washoe Copper Company, the Colorado Smelting & Mining Company, and the defendant, and control and direct the affairs and policies of all these companies. It is the intention and purpose of the Amalgamated Copper Company and of Daly, Rodgers, and Rockefeller, and their associates, as soon as the same can be done, to have all of the property of the companies named transferred to the Amalgamated Copper Company, and have such corporations wound up and dissolved. The policy and business management of the Boston & Montana Consolidated Copper & Silver Mining Company and the Butte & Boston Consolidated Mining Company, as petitioner is informed and believes, were largely dictated and controlled by the Amalgamated Copper Company, its officers, agents, and representatives, and Daly, Rodgers, and Rockefeller, with the understanding between the persons named and the officers and represetatives of the corporations, that each and

all of them shall and will use all means which may be employed to that end to prevent the Montana Ore Purchasing Company and the Heinzes, and those associated with them, from carrying on the business of mining and reducing ores in Silver Bow county, and to burden and harass them with all manner of suits based upon pretended claims and to acquire all of their mining properties and mining rights, and their reduction and smelting plants to the end that the persons and corporations named shall be the owners and operators of all mining claims and smelting and reduction plants in the county, and that they may thereby be able to control the production of valuable ores and dictate and determine the wages which shall be paid for labor and the price of all supplies and merchandise and as well be able to influence the price of copper.  These corporations and persons have united in the unlawful conspiracy against the Montana Ore Purchasing Company and the Heinzes and those associated with them, and are engaged in doing everything possible to effect their purposes.  Within the last two years the Montana Ore Purchasing Company and the Heinzes and those associated with them have expended about $1,500,-000 in the purchase of mining properties in Silver Bow county and in their endeavors to develop theretofore undeveloped ore bodies and in attempting to protect their rights to their properties.  In almost every instance in which the petitioner and his associates have become the owners of mining property and have undertaken to develop the ore bodies therein and to extract and reduce them, some of the corporations named or their representatives or agents have laid false and fraudulent claims thereto for the purpose of preventing the carrying on of the mining business and the extraction and reduction of the ores therefrom; and in instances where the petitioner or his associates, or the Montana Ore Purchasing Company, have had the apex or apexes of veins within their own claims it has been falsely and fraudulently asserted and pretended by some of the companies mentioned, or by their representatives, that such

mining claims had no extralateral rights and that the owners could not follow such veins on their dip beyond planes drawn downward through the vertical boundaries; and where the veins apex in such claims and ores in any considerable quantity were found within the surface boundaries it has been fraudulently claimed that the veins do not apex in such claims but that they have their apex in some ground or claim alleged to be owned by some of the corporations, and that the ore bodies within the mining ground of the petitioner or those associated with him do not belong thereto. These false and fraudulent claims have been made in furtherance of the conspiracy; and by means of false and fraudulent testimony submitted in support thereof and which could not be detected by the court or judge to whom it was presented, and which could not, at the time, with absolute certainty and conclusiveness be shown by the petitioner and those associated with him to be false or without any foundation in fact, the conspirators have obtained injunctions against the petitioner, or those associated with him, preventing such ores from being mined, and when the petitioner or those associated with him have succeeded in establishing the invalidity of an injunction against them issued out of one court, the conspirators have almost immediately applied for an injunction in a different court on the same or other pretenses made regarding the same matter. The defendant, the Washoe Company, and the Anaconda Company are particularly conspiring against the petitioner unlawfully to prevent him from mining ores belonging to said interest in the Nipper lode claim and to prevent the owners of an undivided thirty-one—thirty-sixths interest from having any enjoyment of their property therein. The petitioner then pleads matter intended to exhibit the existence of the conspiracy in so far as the defendant, the Washoe Copper Company and the Anaconda Copper Mining Company are concerned. Petitioner's lease is very valuable and the amount and value of the ore which he can have mined and reduced from the Nipper lode claim, unless enjoined, cannot be ascertained,

and if he is restrained the lease will be valueless. In case an injunction should be obtained by the defendant against him, his only remedy against it, as he is informed and believes, would be upon such bond as the court would require on granting the injunction, and such bond and the remedy thereon would be entirely inadequate for his protection and he would be irreparably damaged. The ores in the Nipper claim are largely copper, which has the very high price at the present time of about 16 cents per pound,—about 5 cents per pound more than it had sold for for some years prior to 1899, and there is a very great likelihood that the price of copper will decline in the future and will perhaps in the next year or so fall to 11 cents a pound or less. The petitioner is at present extracting large amounts of ore from the part of the Nipper vein which is claimed by the defendant, and will in a short time be able to mine in the neighborhood of 400 tons a day from the vein which the defendant is asserting title to and is threatening to enjoin him from mining, and if enjoined he will suffer the loss of the profit which he will make in such mining of at least $6,000 per day. A large hoisting plant and machinery is upon the Nipper lode claim and extensive underground workings are therein, and a large number of men are employed as miners by the petitioner; if he is enjoined from mining the ores, it will result in a large number of men being thrown out of employment, and the Nipper lode claim and its equipment remaining idle for a long time. In order to protect the rights of the petitioner as against the defendant and those acting in aid and assistance of it, necessity exists for the appointment of a receiver with the powers which were afterwards conferred upon him by the order of appointment.

The defendant sought to purge the petition of matter which it asserted to be immaterial, but the motion in that behalf was denied. A demurrer to the petition was also overruled. To the petition the defendant answered. It admits that the defendant intended to bring suit against the petitioner, and avers that by an amended complaint in the action instituted by the

defendant against the Montana Ore Purchasing Company and F. Augustus Heinze, referred to in the petition, the petitioner had been made a party defendant, and an application for an injunction has been made and a restraining order issued. The defendant, while admitting that a friendly feeling existed between the companies named as co-conspirators with it, and that the Heinzes and the Montana Ore Purchasing Company are the common enemies of these corporations, denied all allegations of fraud, conspiracy, and bad faith. The allegations concerning the business of the Montana Ore Purchasing Company and the Johnstown Mining Company and the relation of the petitioner and the Heinzes to them were admitted, as was also the allegation concerning the pendency of a large number of suits between them and the Boston & Montana and the Butte & Boston Companies. The organization of the Amalgamated Copper Company was admitted, and that Daly, Rodgers, and Rockefeller are interested in it was likewise admitted. Admission was made that the Nipper vein enters into the Oden lode mining claim on its dip and passes into it on its strike, and that the Washoe Company had obtained an injunction and that the action had not been tried; also that the Anaconda Copper Company was prosecuting some work within the Nipper claim. The present price of copper as averred in the petition was admitted. The existence of the hoisting plant and machinery on the Nipper, and that men are employed in carrying on mining operations thereon were admitted. The other allegations of the petition were denied. A replication was filed. It is not necessary further to set forth the pleadings on the application for the appointment of a receiver, as the foregoing synopsis contains all that is necessary to be stated in order that the positions of the respective parties may be understood. After a hearing the court made the order appealed from.

1. The fundamental, or, at least, the principal, issue presented by the pleadings in the action wherein the receiver was appointed is whether the legal title to the vein in controversy

is in the plaintiffs or in the defendant,—that is to say, the right to the relief by the remedy of injunction must under the pleadings depend upon the establishment of the legal title. Each party asserts the legal title as the basis of his cause of action or defense. Counsel for the defendant argue that since the asserted rights of the parties rest upon alleged legal, as distinguished from equitable, titles, a receiver ought not to have been appointed, whatever showing of merit the application may otherwise have had,—this upon the theory that where the principal question is as to a legal right or title, chancery is without jurisdiction to appoint a receiver, no matter what equity may be disclosed. Whether or not the position of the defendant be correct we need not decide upon this appeal, preferring to reserve the question and to dispose of the case upon other grounds. For the same reasons we reserve the questions whether or not the motion and the demurrer addressed to the petition were well interposed, and the question whether the assignments of the leases under which the petitioner asserts his rights were proved by the best evidence. We are inclined to the opinion that the petition for the appointment of the receiver is lacking in substance, but not being satisfied of its insufficiency, we do not pass upon that question.

2. We do not pause to consider what would have been the duty of the court below had the allegations of the petition been proved or substantial evidence adduced tending to prove them. In making the order appealed from the court below erred. Succinctly stated the alleged facts upon which it is sought to obtain the appointment of a receiver are these: The action was brought to obtain an injunction restraining the defendant from committing continuing trespasses upon the Nipper lode claim. At the time the action was commenced and also when the petition was filed, the petitioner—one of the plaintiffs—was in possession of the property the title to which is in dispute. Whatever right he has to the property arises from the terms of the lease expiring on July 12, 1901. The defendant intends presently to bring an action against the petitioner in which it

will seek to restrain him from mining the vein in controversy;
in support of its application for an injunction it will procure
witnesses wrongfully, falsely, and fraudulently to testify that,
in their opinion, the vein has its apex for a part of its length
in the Little Mina lode claim, owned by the defendant, and
that the vein passes upon its dip into the Nipper lode claim.
By such character of evidence it will likely succeed in deceiv-
ing the district court of Silver Bow county, where the present
action is pending, and procure from that court, or one of its
judges, an injunction.   The defendant knows the apex is not
within the Little Mina lode claim  and will seek to obtain the
injunction in bad faith for the purpose of harassing the peti-
tioner and his associates and destroying their business,—all
of which will be done in pursuance of an unlawful conspiracy
entered into by the defendant and others with the view of
accomplishing that end.   The petitioner's lease will expire on
July 12, 1901, and if defendant succeeds in obtaining an inter-
locutory injunction the lease will be valueless to the petitioner,
unless a receiver be appointed, for the reason that a final trial
upon the merits cannot be had until after his right to mine will
have ceased.   Unless a receiver be appointed during the life-
time of the lease the petitioner will lose at least $6,000 a day,
the profits he would make if not enjoined.   In case he is
enjoined his only remedy would be an action upon such bond
as the court might require upon the granting of an injunction,
which bond would be inadequate for his protection and difficulty
would be experienced of estimating and proving the amount
of the damages he would suffer.   The present price of copper
is 16 cents a pound, being 5 cents more than copper has sold
for during some years prior to 1899, and there is a likelihood
that the price will decline  and perhaps next year will fall to
11 cents or less.

The allegations concerning the existence of an unlawful con-
spiracy are without substantial support in the evidence.   For
the like reason the charge that the defendant would support
its application for an injunction against the petitioner by false

and fraudulent testimony must be disregarded. Neither does the evidence tend to prove that the defendant knows the apex is not within the Little Mina lode claim,—on the contrary, there was evidence tending to establish the existence of the apex within that claim. These allegations must therefore be disregarded. Having eliminated these, what were the facts which the district court considered sufficient to warrant the appointment of a receiver to work the vein in controversy? The plaintiffs, including the petitioner, had by an interlocutory injunction restrained the defendant from mining the vein; the defendant then sued the plaintiffs and obtained a restraining order against them. The petitioner was in possession under a lease which will expire on July 12th next. Except for the restraining order he would be able to operate the property at a profit of not less than $6,000 a day so long as copper is selling at the present price. The bond or undertaking required which will be required of the defendant on the granting of the restraining order or injunction will not afford the petitioner adequate protection, and the damages he will suffer by reason of such injunction will be difficult of ascertainment and proof. With respect to the bond or undertaking, suffice it to say that presumptively the court below, or its judge, required and will require when the occasion demands, of the defendant a bond or undertaking sufficient in all respects to protect the petitioner from any loss occasioned by the injunction. The assertion that, in the event the vein should remain unworked during the term of the lease and it should ultimately be determined that the petitioner had been entitled to mine, difficulty would be experienced in ascertaining and proving the amount of damages suffered by the petitioner on account of his inability, in consequence of the injunction, to work the property under his lease, may likewise be disregarded, for it is hardly necessary to observe that equity will not appoint a receiver because the amount of damages for the injury which may be caused by an injunction is difficult of ascertainment and proof.

Unless the case falls within the provisions of Subdivision

6 of Section 950 of the Code of Civil Procedure, the receiver should not have been appointed. By that subdivision courts may appoint receivers in all cases "where receivers have heretofore been appointed by the usages of courts of equity." Has it been the usage to appoint receivers in a case like the one at bar? Is there any principle or doctrine in equity which justifies the appointment? Argument would seem needless, for it is plain that these two questions must be answered in the negative. The power to appoint a receiver is to be exercised sparingly and not as of course. A strong showing should be made, and even then the authority must be exercised with conservatism and caution. "The object of the exercise of the summary and extraordinary remedy of appointing a receiver is primarily to protect the subject-matter of the controversy from removal, waste or injury during the progress of the action, and to preserve it intact for final disposition by the court according to the rights and priorities of the parties entitled. It is particularly serviceable when there is danger that the subject-matter may be wasted or destroyed, impaired, injured or removed during the progress of the suit. The object is to secure the fund for the party found, upon final hearing to be entitled, and to produce as little prejudice as possible to any of those concerned. When one party has a clear right to the possession of property, and when the dispute is as to the title only, the court is always slow to disturb the possession. Being a power which practically deprives the rightful owners, as well as unlawful claimants, of the possession of property, and it being necessary to its usefulness and value as a remedy that it be exercised in a peremptory way and without a full and final hearing upon the merits, it is to be resorted to with unusual caution, and only for preventing 'manifest wrong imminently impending,' or where the case clearly shows that the complaining party would be in danger of suffering irreparable loss if it were refused." (Beach on Receivers, Sec. 47.) For a court to seize the *corpus* of the property before a decision adjudging the title to be in one of the parties and intrust it to a receiver, however honest and

capable he may be, to await the final determination of the suit, is often in effect the levy of an execution *in limine;* and especially is this true when the receiver is commanded to remove from the property that which constitutes its value.   No matter how erroneous such an order may be, if the court had jurisdiction to make the appointment, the property is liable for the debts incurred by the receiver.   The party in whom the title is ultimately declared may have decided to permit his property to remain unworked, or he may have decided to mine it in a particular fashion; the receiver is not his agent but the arm of the court over which he can have no control.   In the case at bar the petitioner was in possession.   The injunction, if continued in force, would preserve the property until the rights of the parties could be decided.   To appoint a receiver, in an action for an injunction against trespasses, with power to take away the very substance of the estate, on the ground that the defendant will enjoin or has enjoined the plaintiff in possession from extracting ore from the property, accords neither with the usages nor principles of courts of equity.   Except in North Carolina (*Deep River Gold Mining Co.* v. *Fox,* 4 Iredell's Equity 61, 1 Morrison's Mining Reports 296; *Parker* v. *Parker,* 82 North Carolina 165; *Thomas* v. *Nantahala Marble & Talc Co.,* 7 C. C. A. 330, 58 Federal Reporter 485) where the courts seem to base their decisions upon the uncertain, unstable, and dangerous ground of "public policy,"—sometimes a solid foundation, but not infrequently a judicial quicksand,—the prime purpose of a receivership is to take the property from the possession of one of the parties at the instance of the other (or to take it when not in the possession of either) and hold it in the custody of the law for preservation and protection pending the suit.   The party in possession and asserting title may not of his own volition yield or surrender the possession to the court for operation by it of the property despite the objection of the party asserting title thereto.   There may be exceptions to this rule, but the case before us is not one of them.   The case of *Nevada Sierra Oil Company* v. *Home Oil Company* (C. C.)

98 Federal Reporter, 673, does not conflict with the view which we have expressed, for in that case a receiver was appointed to perform the annual work required by the statutes of the United States upon an unpatented mining claim, to the end that the possessory title be preserved for the benefit of the party who should ultimately be adjudged entitled to it; in that case it was held also that an injunction ought not to issue for the reason that if issued the result would necessarily be the draining of a large part of the oil from the land in controversy by those operating the adjoining territory. Nor is *Elk Fork Oil and Gas Company* v. *Foster,* 99 Federal Reporter, 495, in point. There, as here, the title was in dispute; but all parties admitted the necessity of operating the property containing oil and gas wells; unless a receiver was appointed to take charge and operate the property, the oil and gas would escape and be lost; whereas in the case at bar the ores would remain in the bowels of the earth without change in character or diminution in value during the pendency of the litigation. *Bigbee* v. *Summerour,* 101 Georgia, 201, 28 South Eastern Reporter, 642, is in many respects similar to the present case. There the plaintiff sought an injunction to restrain the defendant from the commission of a trespass by mining for gold upon a parcel of land of which the defendant was in possession and asserting his right to extract the gold therefrom under a lease or license from the plaintiff. The court granted a temporary restraining order against the defendant, who then procured the appointment of a receiver to work the mine, stope out the levels already run, beat out the gold and hold the proceeds. The court said: "The right to work this particular mine was the real subject of the litigation. If the plaintiff had given to the defendant no license to mine in the shaft upon his land, then the right did not exist in him, and the plaintiff was entitled to have his property remain as it was at the time defendants were enjoined; and to deprive him of this substantial right might have resulted in great damage to him. Courts are not at liberty through receivers to seize the property of solvent

persons, who have substantial rights which they are seeking to enforce through judicial instrumentality. A receiver should be appointed only in cases of extreme necessity, and then only when his appointment is necessary to the preservation of the thing or right in controversy. Courts may not determine *in limine,* upon an application for the appointment of a receiver, the question of possession as between adverse claimants, and should move with extreme caution when they are invited by one of the parties to embark property seized by them through their receivers in industrial enterprises, and expose it to the hazard incident to the conduct of such a business. The circumstances of the present case well illustrate the doctrine which we would here inculcate. The court seized this property, directed the receiver to go into the mining business,—confessedly one of the most hazardous in which any man can engage. Suppose, as the result of his operations, he had demonstrated that there was little gold in the mine, except such as had already been taken out, and had fallen far short of realizing a sufficient fund to defray the expenses of the business venture; what would have been the position of the plaintiff, who, in the first instance, appealed to the court for his protection? His mine would have been destroyed. He would have been liable to be taxed the costs of the receivership, with the probability of having the expense of this business experiment shared by an insolvent adversary. We do not mean to intimate that cases may not arise in which, in the exercise of a wise discretion, a circuit judge would be authorized to appoint a receiver, and direct him to continue the conduct of a business in which the defendant was engaged at the time his property was seized; but we do mean to say that such a course can only be justified when it is absolutely necessary to the preservation of the rights of the parties, it being borne in mind that preservation of the property is the purpose for which a receiver is primarily appointed, and that a judicial administration through him of an estate seized by the court, though the final, is nevertheless, a secondary consideration. Necessarily these matters are largely within the discretion of

the trial judge, but at last it becomes a question of law whether the court can lawfully embark property seized by it in an industrial enterprise; and the exercise of this power depends upon how far such conduct may be fairly necessary to the preservation of the existing status, taking into consideration the character of the property, the uses to which it may be applied, and how far and to what extent use may be necessary to its preservation. So far as we are enabled to do so by judicial utterance, we are disposed to discourage the practice, at the present day too prevalent in the chancery courts, of undertaking to employ the judicial machinery in the conduct of commercial and manufacturing enterprises, the control of which should be more properly committed to private hands." These observations, as well as the doctrine announced, we approve.

So far as the receivership is concerned the petitioner occupies no better position than the owner of the fee. As lessee he was no more entitled to have a receiver appointed than was the owner. His estate is one for years, carved out of the freehold. If the owner of the greater estate was not entitled to have a receiver appointed—and in the circumstances disclosed by the record he certainly was not—the tenant for years was not so entitled. No sound reason is suggested why the petitioner ought to be declared to have rights touching the appointment of a receiver when, upon practically the same ultimate facts, his landlord would not have them. To hold that the tenant possesses such rights would be to decide that, although the owner of a mining claim in possession of the vein therein the title to which is in controversy, could not procure the appointment of a receiver, he might lease it for a period of time expiring prior to the day on which a final trial of the issue could be had, and thereby enable the lessee to obtain for himself, or for the owner, the relief which equity would refuse to the owner of the fee were he himself applying for a receiver. Such a distinction between the right of the owner and the right of the lessee does not exist.

In this opinion we have merely outlined the grounds upon

which the order must be reversed. Press of other matters and the desire as promptly as may be to remedy as far as we can the error committed prevent us from elaborating our views.

The order appointing a receiver is reversed and the cause is remanded. The *remittitur* will issue forthwith.

*Reversed and remanded.*

Mr. CHIEF JUSTICE BRANTLY: I concur.

Mr. JUSTICE MILBURN: I concur. I do not consider that it was necessary to do more than to determine that the pleadings fail to disclose a case where receivers have been heretofore appointed by the usages of courts of equity. (Subsection 6, Sec. 950, of the Code of Civil Procedure.) In my opinion, no such case is revealed to us by the pleadings.