[Civ. No. 785.  Third Appellate District.—November 23, 1910.]

## LIGHTNER MINING COMPANY, a Corporation, Petitioner, v. SUPERIOR COURT OF CALAVERAS COUNTY, and A. I. McSORLEY, Judge Thereof, Respondents.

MINING CLAIMS—APPLICATION FOR QUARTZ PATENT—CONTEST IN LAND OFFICE—ADVERSE CLAIM—RIGHTS UNDER TOWNSHIP PATENT—JURISDICTION OF SUPERIOR COURT.—Where the owner of a quartz mining claim applied for a patent therefor, and a mining corporation claiming under a townsite patent covering seventy-seven feet on the dip of the ledge, upon which it had mined, protested against such patent, although the land office fixed a hearing before the register and receiver of the local land office to determine whether the quartz claim antedated the townsite entry, yet the superior court had jurisdiction under section 2326 of the Revised Statutes to determine the merits of the case, and to award damages in favor of the

applicant for the patent against such mining corporation for trespass upon his quartz claim, and the conversion of large quantities of valuable minerals taken therefrom.

ID.—JURISDICTION OF COURT TO TRY CASE AND REFUSE STAY—PROHIBITION.—The superior court had jurisdiction to try the case, and to deny a motion to continue the case until decision of the question referred to the local land office, whether such decision be right or wrong. A writ of prohibition cannot issue to restrain the exercise of jurisdiction, however erroneous.

ID.—"PROTEST AGAINST ISSUANCE OF PATENT"—QUESTION OF "ADVERSE CLAIM"—JURISDICTION.—If the paper filed by the mining corporation petitioner for the writ of prohibition in the land office, merely denominated a "protest against issuance of patent," could not be said to constitute an "adverse claim" within the meaning of the statute, in that event there was no controversy to be settled by the land department, and it was proper for the superior court to determine the whole issue between the parties.

ID.—TITLE UNDER TOWNSITE PATENT—OWNERSHIP OF MINING CLAIMANT—QUESTION OF LAW FOR COURT.—Where there is no controversy that title had passed under the townsite patent, the question whether the quartz claimant had the better right of ownership as against a townsite patentee is a question of law, not for the land department, but for a court of competent jurisdiction which has power to determine who is in fact the owner of the land.

ID.—CONTROL OF LAND DEPARTMENT REMOVED BY PATENT—EXCLUSIVE JURISDICTION OF SUPERIOR COURT.—If, as claimed by the mining company in its answer, a patent to this land was issued in 1875, then, of course, the control of the land department over it must have ceased, and the issue as to whether the defendant or plaintiff had been the owner of the land for many years was within the exclusive jurisdiction of the superior court.

ID.—PROHIBITION — ADEQUATE REMEDY AT LAW.—The writ of prohibition should not issue where there is a plain, speedy and adequate remedy at law.

ID.—REMEDY BY APPEAL—GENERAL RULE.—It is the general rule that where there exists an opportunity for a review and correction of the wrong complained of in a higher court on appeal, prohibition will not lie. It is only in exceptional cases that an appeal is not deemed an adequate remedy.

ID.—APPEAL FROM JUDGMENT FOR DAMAGES.—Where the trial court could only render a judgment for damages, an appeal would correct any wrong that might be done to petitioner for the writ of prohibition.

ID.—TIME TAKEN BY APPEAL.—The remedy by appeal does not fail to be speedy and adequate because by passing it through the ordinary course of law more time would be consumed than by the writ of prohibition.

PETITION for writ of prohibition to the Superior Court of Calaveras County.   A. I. McSorley, Judge.

The facts are stated in the opinion of the court.

Nutter & Orr, Street & Street, and J. P. Snyder, for Petitioner.

C. E. McLaughlin, and W. J. McGee, for Respondents.

BURNETT, J.—This is an application for a writ of prohibition to restrain the judge of said superior court from proceeding with the trial of the action of James V. Coleman, plaintiff, v. Lightner Mining Company, defendant, until the final determination by the land department of the United States of an application for a patent to the land involved in the controversy.   Among other facts it appears that the complaint in said action was filed in 1903.   Therein it was alleged that "plaintiff for more than fifteen years last past has been and now is the owner and in the possession and entitled to the possession of all that certain quartz mine, mining property situate, lying and being in the Altaville townsite, in the county of Calaveras, known as and called the 'Billings' quartz mine."   Then follows a particular description of the property.   "That within the surface lines of the said Billings quartz mine extended downward vertically are certain lodes, ledges and veins of quartz and rock in place carrying gold and other valuable minerals.   That the said Billings quartz mine is contiguous to and adjoins on the east the so-called Lightner quartz mine owned and operated by the said defendant corporation; that said defendant has sunk upon the said Lightner quartz mine a shaft and within three years last past has by means of said shaft and cross-cuts, levels, drifts, winzes and stopes connected therewith wrongfully and unlawfully and without the consent of plaintiff entered into and upon the said 'Billings' quartz mine and property . . . and has taken out and extracted therefrom and converted to its own use large quantities of quartz and rock carrying gold and other valuable minerals to the value of $150,000."   The prayer is for this amount and costs of suit.

In the answer the material allegations of the complaint are denied and it is averred that "on the twentieth day of April, 1875, the government of the United States issued a patent to W. B. Norman, county judge of Calaveras county, California, in trust for the several use and benefit of the occupants of the townsite of Altaville in the county and state aforesaid, for the lands therein described. That by mesne conveyances the defendant became and now is the owner of, and it and its grantors for more than forty years last past have been the owners of, in the occupation and possession of and entitled to the possession of lot 13 in block 5 of said Altaville townsite, the north seventy-seven feet of which is within the exterior boundaries of the so-called and alleged Billings quartz mine in the amended complaint described. That on or about the —— day of ——, 1909, plaintiff made application, through the United States land office at Sacramento, California, for United States patent for the so-called and alleged Billings quartz mine. Thereafter this defendant duly filed in said land office its protest against the issuing of a patent for said alleged Billings quartz mine, and the land department ordered that a hearing be had on the twentieth day of April, 1910, before the register and receiver of the said Sacramento land office, to determine whether at the date of the said Altaville townsite entry the alleged Billings quartz claim was known to be a valid mining claim and as such was excepted by operation of law from the said townsite patent." It was therefore claimed by defendant that the land department of the United States has the exclusive power to determine whether the alleged Billings quartz mine was known to be a valid mining claim at the date of said Altaville townsite entry, and that the trial of the case should be stayed until the determination of that question by said department. A motion was made to that effect in the court below. It was heard upon affidavits and denied, and the case was set down for trial. That was the occasion for this application. In response to the order to show cause a demurrer and an answer have been presented by the trial judge. It is necessary to consider only the demurrer, and our attention need not extend beyond the ground "That said petition does not state facts sufficient to warrant or authorize the

issuance of a writ of prohibition by the above-entitled court against the respondents or either of them.''

Two questions are involved herein and these we now proceed to consider. The first is, Does it appear that the court below has exceeded its jurisdiction? and secondly, If so, is it a proper case for prohibition? The answer to each of these must unquestionably be in favor of respondents.

The office of the writ of prohibition has been so frequently considered by this and other appellate courts and so well settled that no extended discussion of the subject is here required. It is sufficient to refer to the sections of the Code of Civil Procedure (1102 and 1103) wherein it is provided in what instances the writ will issue.

As to the court's jurisdiction to deny the defendant's application for a continuance and to set the case for trial, it is contended by respondents that the court was called upon simply to determine whether certain evidence was required to establish one of the issues made by the pleadings, and in the exercise of its judgment as to this it is difficult to understand why the court did not have the juridical power to reach a wrong as well as a right conclusion. Since admittedly that court has jurisdiction of the parties and of the subject matter of the action, and the issue being properly framed, it had authority to try the cause at any time—so it is claimed—and its refusal to continue the trial was no more in excess of its jurisdiction than would be the denial of a similar motion made upon some other ground. But petitioner does not concede the jurisdiction of the court as to the entire subject matter of the action, although admitting that the parties were properly before it and that it had the authority to grant the relief prayed for. It is insisted, however, that exclusive jurisdiction to determine one of the issues, without which no judgment could be rendered, was vested in another tribunal. Therefore, it is said, the court should have pursued the course pointed out in *Potter* v. *Randolph,* 126 Cal. 461, [58 Pac. 906], wherein it is declared: ''The court, very properly, then delayed the trial until the question as to the character of the land was determined by the land department, which alone had the power to decide that controversy. The court had jurisdiction of the action, but could not try that particular controversy which was involved in the action.''

But that case and others cited by petitioner are inapplicable to the situation here. The pleadings disclose that an application was made in due form to the land department for a patent to a quartz mining claim. Section 2325 of the Revised Statutes of the United States [Comp. Stats. 1901, p. 1429] provides how "patents for mineral lands" are obtained, and therein it is declared that "if no adverse claim shall have been filed with the register and the receiver of the proper land office at the expiration of the sixty days of publication, it shall be assumed that the applicant is entitled to a patent, upon the payment to the proper officer of five dollars per acre, and that no adverse claim exists; and thereafter no objection from third parties to the issuance of a patent shall be heard, except it be shown that the applicant has failed to comply with the terms of this chapter," and section 2326 [Comp. Stats. 1901, p. 1430] provides that "where an adverse claim is filed during the period of publication . . . all proceedings, except the publication of notice and making and filing of the affidavit thereof, shall be stayed until the controversy shall have been settled or decided by a court of competent jurisdiction, to determine the question of the right of possession and prosecute the same with reasonable diligence to final judgment." The case before us is brought clearly within the contemplation of said section. It may be that the paper filed by petitioner in the land department could not be said to constitute an "adverse claim" in the sense of the statute, it being denominated a "protest against the issuance of the patent," but in that event there was no controversy to be settled by said tribunal, and it was proper for the said superior court to determine the issue between the parties. Whether the opposition be considered an adverse claim or not, therefore, it would seem that the court was justified in denying the motion to continue the trial.

But, viewing the case from a somewhat different point of view, it is clear that the superior court had complete jurisdiction over the entire subject matter of the controversy. The question of jurisdiction must be determined, of course, by the averments of the pleadings. It thereby appears, both by the allegations of the complaint and those of the answer, that there is no issue as to who is entitled to a patent, but it is assumed that a complete title has long since vested and the con-

troversy is as to the ownership of the property, it being averred by plaintiff that he has been for many years and is now the owner, in the possession and entitled to the possession of said property, while, in defendant's answer, we find the equally positive allegation, as before stated, that it is now the owner and it and its grantors for forty years past have been the owners of and in the occupancy and entitled to the possession of said property. Thus is a question of law presented for the determination not of the land department but of a court of competent jurisdiction. This may be made clear by a reference to some of the decisions. In *Gage* v. *Gunther,* 136 Cal. 338, [89 Am. St. Rep. 141, 68 Pac. 710], we have a comprehensive statement of the function of the land department in such matters. There it is declared that: "The decision of the land department of the United States upon any question of fact, in determining the right of any person to receive a patent for any of the public lands under the laws of the United States, is conclusive upon all other tribunals, in the absence of fraud, mistake, or imposition in obtaining the patent," but "if, in making its determination of fact, the land department has disregarded the law applicable thereto, or has erred in its construction of the law, or by mistake has issued to one person a patent, which upon undisputed facts should have been issued to a contestant, the patentee will be held a trustee for the contestant in proceedings to be taken in a court of equity and governed by the rules of equity procedure."

In *Potter* v. *Randolph,* 126 Cal. 461, [58 Pac. 906], it is said: "The land department of the United States is not a special tribunal organized to determine who is the owner of land. The department is the medium through which parties may acquire the title of the United States. Its functions are mostly administrative and only incidentally judicial. It determines the existence or nonexistence of alleged facts, to enable it to select the person who is entitled to purchase. The proceeding is to acquire title, not to determine who has it."

In *Iron Silver Min. Co.* v. *Campbell,* 135 U. S. 286, [10 Sup. Ct. Rep. 765, 34 L. Ed. 155], it is declared that "when a person has once obtained a patent of the United States for his land, he should be only required to answer persons who have some established claim, and to contest with the party

not before the administrative departments, but in courts of justice, by the regular proceedings which determine finally the rights of parties to property. . . . We have more than once held that when the government has issued and delivered its patent for lands of the United States, the control of the department over the title to such land has ceased, and the only way in which the title can be impeached is by a bill in chancery; and we do not believe that as a general rule, the man who has obtained a patent from the government can be called to answer in. regard to that patent before the officers of the land department of the government.'' If a patent to this land was issued in 1875, as claimed by defendant in its answer, then, of course, the control of the land department over it must have ceased and the issue as to whether the defendant or plaintiff had been the owner of the land for many years was within the exclusive jurisdiction of the superior court.

Again, the writ of prohibition should not issue for the reason that there is a plain, speedy and adequate remedy at law. It is not disputed that the court's action can be reviewed on appeal, and there is no sufficient reason why petitioner should have invoked this extraordinary remedy instead of pursuing the usual course. The determination of causes on appeal is probably not always as speedy as it should be, but that is not the fault of the law. It may be admitted also that as to this question there is some conflict in the decisions, but we think the true rule is declared in the cases cited by respondents.

In *Jacobs* v. *Superior Court,* 133 Cal. 364, [85 Am. St. Rep. 204, 65 Pac. 826], it is held that: ''Since the amendment in 1897 to section 939 of the Code of Civil Procedure, allowing an appeal from an order appointing a receiver, and the amendment at the same time of section 943, providing for the staying of the order by an undertaking on appeal, a writ of prohibition will not lie to arrest proceedings under such an order, as the party aggrieved has 'a plain, speedy and adequate remedy in the ordinary course of law,' within the meaning of section 1603 of that code, notwithstanding a question of jurisdiction is involved in the application for the writ.'' In the course of the opinion it is declared that ''There might, perhaps, be exceptional facts in a case which would

call for a writ of prohibition, notwithstanding an appeal from an order appointing a receiver, but the general rule is as stated above, and applies to the case at bar.''

In *Cross* v. *Superior Court,* 2 Cal. App. 342, [83 Pac. 815], it is said: ''There are cases on the border line in which it is a matter of some difficulty, and generally, in this state, a matter of discretion, as to whether or not there is a plain, speedy and adequate remedy in the ordinary course of law. It is the general rule that, where there exists an opportunity for a review and correction of the wrong complained of in a higher court on appeal, prohibition will not lie.''

In line with the foregoing are other cases cited by respondents: *Agassiz* v. *Superior Court,* 90 Cal. 103, [27 Pac. 49] ; *Lindley* v. *Superior Court,* 141 Cal. 220, [74 Pac. 765] ; *McAdoo* v. *Sayre,* 145 Cal. 351, [78 Pac. 874] ; *McAneny* v. *Superior Court,* 150 Cal. 10, [87 Pac. 1020] ; *Johnston* v. *Superior Court,* 4 Cal. App. 92, [87 Pac. 211] ; *Lange* v. *Superior Court,* 11 Cal. App. 6, [103 Pac. 908] ; *Burge* v. *Justice Court,* 11 Cal. App. 215, [104 Pac. 581].

The cases cited by petitioner to the contrary involve peculiar features that led the supreme court to determine that an appeal was not an adequate remedy.

In *Glide* v. *Superior Court,* 147 Cal. 21, [81 Pac. 225], it appeared from the undisputed facts, as stated by the court, ''that the superior court of Yolo county has taken unto itself the determination of a question of fact, jurisdiction to determine which question of fact is in the first instance exclusively vested by law with the board of supervisors of Yolo county. Further it appears that the superior court of Yolo county, as it shall determine the fact to be, will proceed to enjoin the board of supervisors in the performance of a legislative duty, the execution of which is made their sole province under the law.'' In such a case the higher court should undoubtedly exercise its discretion in granting the writ. Sound public policy requires that an attempt, whether intentional or otherwise, on the part of a court to usurp the functions of the legislative department of the government should not be tolerated but should immediately be arrested.

In *Dugan* v. *Superior Court,* 149 Cal. 99, [117 Am. St. Rep. 119, 84 Pac. 770], the writ was issued to restrain the superior court of Fresno county from taking any further pro-

ceedings in the matter of the settlement of an estate. It appeared that said court had no jurisdiction whatever, and it is quite apparent, as said by the court, that ''In view of the complications which will necessarily follow the attempted exercise of jurisdiction in the matter by two superior courts, it cannot be said that there is a plain, speedy and adequate remedy in the ordinary course of law.''

The other cases cited will also be found, upon examination, to be clearly distinguishable from the one at bar. Here the court could only render judgment for damages. An appeal would effectively correct any wrong that might be done to petitioner. No harm could possibly result except some delay in affording appropriate relief. The cases seem to be agreed, as stated in *Agassiz* v. *Superior Court,* 90 Cal. 103, [27 Pac. 50], that ''A remedy does not fail to be speedy and adequate because by pursuing it through the 'ordinary course of law' more time would probably be consumed than in the proceeding here sought to be used.''

We think no sufficient reason has been shown for delaying any further the trial of said action in said superior court. The order to show cause is therefore discharged and the writ denied.

Chipman, P. J., and Hart, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on January 16, 1911.