[Civ. No. 1928. Fourth Appellate District.—October 8, 1935.]

SUNSET FARMS, INC. (a Corporation), Petitioner, v. THE SUPERIOR COURT OF IMPERIAL COUNTY, Respondent.

Rush & Beirne, Lawler & Degnan, Mathes & Sheppard, W. C. Mathes, Wm. T. Coffin, Jud Rush and Lynden Bowring for Petitioner.

Louis Ferrari, Edmund Nelson, Hickox & Trude, Clarke & Bowker, A. S. Goldflam, Cullinan, Hickey & Sweigert, Cushing & Cushing and E. S. Layman for Respondent.

JENNINGS, J.—The petitioner has applied for the issuance of a writ of prohibition to prohibit the taking of any further proceedings under an order appointing a receiver on the ground that the order of appointment is void for lack of jurisdiction.

The action in which the receiver was appointed was instituted in the Superior Court of Imperial County by H. W. Everts on June 3, 1935. Petitioner was named as a defendant therein. The complaint in said action, in addition to other relief, sought the appointment of a receiver for the property of petitioner pending the trial of the action. On the same date on which the action was commenced the plaintiff therein, without notice to petitioner, applied to the respondent court for the appointment of a receiver and an *ex parte* order appointing a receiver was thereupon made. The receiver named in the order qualified immediately following the entry of the order and on the aforementioned date ousted petitioner's officers and directors and seized and took possession of all property and assets of petitioner located in Imperial County and its corporate records and books and assumed control and management of the entire business and affairs of petitioner. Thereafter, petitioner moved the respondent court to vacate the order appointing the receiver. This motion was presented on June 10, 1935, and was denied on said date. The application for a writ of prohibition was filed in the Supreme Court on June 28, 1935. On July 1, 1935, the Supreme Court made an order commanding respondent to show cause on July 15, 1935, why the writ of prohibition should not issue as prayed and at the same time transferred the matter to this court for determination.

The respondent has demurred to the petition and has also filed its answer thereto.

The principal contention advanced by respondent in support of the demurrer is that the petition is fatally defective in that it fails to disclose the absence of a plain, speedy and adequate remedy available to petitioner in the ordinary course of law. The statute which authorizes the issuance of the writ

provides that it may issue "in all cases where there is not a plain, speedy, and adequate remedy in the ordinary course of law" (sec. 1103, Code Civ. Proc.). Respondent urges that petitioner possessed the right of immediate appeal from the order which it now seeks to prohibit and that this remedy was plain, speedy and adequate. The advancement of this contention necessitates a consideration of those allegations of the petition whereby petitioner seeks to deny that there is available to it any plain, speedy or adequate remedy in the ordinary course of law.

These allegations are lengthy and are set forth with very considerable detail. The reasons why an appeal from the order or from any judgment that may be rendered after trial of the action would be inadequate are seven in number and comprise approximately ten pages of the printed petition. An examination of them discloses that they are predicated on the hypothesis that the receivership must necessarily be continued in effect pending an appeal from the order. This basic assumption is incorrect. Section 943 of the Code of Civil Procedure expressly authorizes a stay of the execution of an order appointing a receiver on an appeal therefrom through the medium of an undertaking executed for the purpose by the party perfecting the appeal. It was declared in *Jacobs* v. *Superior Court*, 133 Cal. 364, 365 [65 Pac. 826, 85 Am. St. Rep. 204]: "Formerly—and when *Havemeyer* v. *Superior Court*, 84 Cal. 327 [24 Pac. 121, 18 Am. St. Rep. 192, 10 L. R. A. 627], was decided—there was no appeal from an order appointing a receiver, but in 1897 (Stats. 1897, p. 55) section 939 of the Code of Civil Procedure was amended so as to allow such appeal, and at the same time section 943 was amended so as to provide for the staying of an order appointing a receiver by an undertaking on appeal. These amendments were apparently intended to afford a remedy for prodigal, unwise, and unwarranted appointments of receivers, which seems to be a growing evil; and we think that they do afford an adequate remedy, as contemplated by section 1103, and the decisions of this court on the subject. The fact that a question of jurisdiction arises does not change the rule as to the adequacy of the remedy by appeal. (See *Agassiz* v. *Superior Court*, 90 Cal. 101 [27 Pac. 49].)

"The filing of the undertaking operates as a *supersedeas*, suspends all authority of the receiver under the order, with-

draws from him the right to the control and possession of the property involved, and restores the same to the appealing party, from whom it has been taken.''

The decision in *Jacobs* v. *Superior Court, supra,* is peculiarly in point because, like the present, it was an original application addressed to the Supreme Court for a writ of prohibition to arrest all further proceedings upon an order of the respondent superior court appointing a receiver. There is a further similarity in that the order sought to be annulled authorized the receiver to take possession of farming land with the crops growing thereon in an action to foreclose a mortgage on said land. The petitioners for the writ there maintained that they were the owners of the growing crops and that the plaintiff in the foreclosure suit being merely a mortgagee of the naked land had no legal right to interfere, by receivership or otherwise, with their possession and control of the crops. The respondents contended that the lease under which petitioners set up their claim was without consideration and was executed merely to delay creditors. The Supreme Court declined to examine the conflicting claims of the parties in the action in which the receiver was appointed or to determine whether or not the appointment was proper on the ground that an appeal from the order of appointment afforded a plain, speedy and adequate remedy in the ordinary course of law within the meaning of section 1103 of the Code of Civil Procedure. That an appeal from an order appointing a receiver affords a remedy in the ordinary course of law sufficiently adequate to estop invocation of the extraordinary remedy of prohibition is upheld in the following decisions: *Johnston* v. *Superior Court,* 4 Cal. App. 90 [87 Pac. 211]; *Hubbard* v. *Justice's Court,* 5 Cal. App. 90 [89 Pac. 865]; *California etc. Assn.* v. *Superior Court,* 8 Cal. App. 711 [97 Pac. 769]; *Lightner Min. Co.* v. *Superior Court,* 14 Cal. App. 642 [112 Pac. 909]; *Campbell* v. *Superior Court,* 67 Cal. App. 728 [228 Pac. 354]; *Greenburg* v. *Superior Court,* 71 Cal. App. 332 [235 Pac. 92]; *Pacific Broadcasting Co.* v. *Superior Court,* 100 Cal. App. 649 [280 Pac. 991]; *Highland Securities Co.* v. *Superior Court,* 119 Cal. App. 107 [6 Pac. (2d) 116].

The petition here alleges that the remedy of appeal from the order will be inadequate because a period of approximately two years would be required for the determina-

tion of such an appeal. It may be conceded that the determination of an appeal from the order would require the consumption of more time than is required by this proceeding. The time element does not, however, determine the inadequacy of the ordinary remedy. "A remedy does not fail to be speedy and adequate because by pursuing it through the 'ordinary course of law' more time would probably be consumed than in the proceeding here sought to be used." (*Agassiz* v. *Superior Court,* 90 Cal. 101, 103 [27 Pac. 49]; *Lightner Min. Co.* v. *Superior Court, supra.*)

It was suggested in *Jacobs* v. *Superior Court, supra,* that there might be exceptional facts which would call for a writ of prohibition notwithstanding the existence of the ordinary remedy afforded by appeal from the order of appointment. Petitioner maintains that its application shows that such facts are here present and that this is therefore a proper case for the issuance of the writ.

The petition alleges that petitioner is a Nevada corporation authorized to transact business in California and engaged in the transaction of such business with offices in El Centro, California; that petitioner's principal business is the raising and marketing of canteloupes, lettuce, asparagus, alfalfa, barley and other crops grown on lands in Imperial County which it has leased from various persons; that at all times since its organization petitioner has had issued and outstanding 11,884 shares of preferred stock having a par value of $10 per share and 2,100 shares of common stock having no par value; that 1100 shares of the common stock were originally issued to Clarence M. Bjerke on payment by him to petitioner of the sum of $1100 and 1,000 shares of common stock were issued to Jud R. Rush on payment of the sum of $1,000; that 3,000 shares of preferred stock were issued to Hazel F. Bjerke, and 3,000 shares of such stock were issued to Will S. Fawcett for all of which petitioner received conveyances of two parcels of citrus bearing land one of which is located in Los Angeles County and the other in Orange County; that 5,884 shares of preferred stock were issued to Will S. Fawcett Company in return for which petitioner received certain personal property and leases from said Fawcett Company; that at all times since the original issuance of petitioner's capital stock, it has continued in the ownership and possession of the parties to whom it was originally issued

except that on November 28, 1933, H. W. Everts acquired from the Will S. Fawcett Company at execution sale the above-mentioned 5,884 shares of preferred stock owned by that company and is now the owner and holder of such stock. The remaining allegations of the petition describe the institution of the action in which the receiver was appointed, the fact that the receiver was appointed *ex parte* without notice to petitioner, and the unsuccessful effort of petitioner to have the order of appointment vacated. These allegations also contain a declaration that the respondent court in making the order here attacked exceeded its jurisdiction and that the order and all acts performed pursuant to it are void for certain specified reasons. There is also, as has heretofore been noted, a denial that petitioner possesses any plain, speedy or adequate remedy in the ordinary course of law it being specifically alleged that the remedy of appeal either from the order or from any judgment which may be rendered will be wholly inadequate for various reasons.

Since it is apparent that the order appointing the receiver was based entirely on the verified complaint in the action of *Everts* v. *Sunset Farms, a Corporation, et al.,* this pleading may properly be examined for the purpose of determining whether or not the respondent court exceeded its jurisdiction in making the order which is here sought to be annulled.

It is therein alleged that Sunset Farms, Inc., is a corporation which was organized and incorporated in the state of Nevada on September 3, 1932, and thereafter on September 7, 1932, duly qualified itself to transact business in California; that the defendant Will S. Fawcett is a director of said corporation; that for many years prior to September 3, 1932, Fawcett had engaged in extensive farming operations in California; that in the year 1926 Fawcett caused to be incorporated in California a corporation under the name of Will S. Fawcett Company, of which he became the president and general manager and that he continued to be and now is its president; that Fawcett, at all times after the incorporation of the Fawcett Company until September, 1932, owned at least 85 per cent of the issued and outstanding capital stock of said corporation and that the remainder of the stock was owned by members of Fawcett's family and by employees of

the corporation with the exception of one share; that on September 3, 1932, the Fawcett Company was indebted to the Bank of America National Trust & Savings Association in the sum of $175,000 with interest thereon by reason of certain promissory notes executed by the company in favor of the bank; that on October 4, 1932, the bank assigned the notes to the plaintiff; that on October 5, 1932, the plaintiff commenced an action to enforce collection of the notes against the Fawcett Company and recovered judgment in the amount of $200,700.52 on May 31, 1933; that on August 22, 1933, a writ of execution which had issued on said judgment was returned showing the payment thereon of the sum of $67,910.98 and an unpaid balance of $135,129.42 which was unsatisfied; that subsequently *alias* executions were issued on the judgment which produced payments on the judgment leaving an unpaid and unsatisfied balance of $135,116.23 on the date of the institution of the action; that on September 3, 1932, the defendant Will S. Fawcett was indebted to the above-mentioned bank in the sum of $390,000, being the principal amount of certain promissory notes executed by Fawcett whose payment was guaranteed by the Fawcett Company; that on October 4, 1932, the bank assigned these notes to the plaintiff, who commenced suit to enforce their collection on October 5, 1932, which suit resulted in the entry of a judgment in plaintiff's favor against Fawcett for $314,553.16 on January 23, 1934; that thereafter a writ of execution and *alias* writs were issued on said judgment and were returned and filed showing that the unpaid and unsatisfied amount of the judgment was $277,833.07; that on September 6, 1932, the Fawcett Company was the owner of certain described personal property consisting of farming tools and equipment, supplies and materials, and a trademark for fresh cantaloupes, lettuce and grapes registered by Will S. Fawcett in the United States patent office and assigned by Fawcett to the Fawcett Company; that on the above-stated date the Fawcett Company also owned two parcels of real property in Imperial County, California, and on said date the said company transferred all of the described personal property to the Sunset Farms, Inc., and thereupon executed leases of the real property described in the complaint for a period of 20 years to the Sunset Farms, Inc.; that on September 6, 1932, Fawcett himself

owned two parcels of land, one located in Los Angeles County and the other in Orange County, which he then conveyed to the Sunset Farms, Inc.; that the transfers of personal property and the conveyances of real property thus accomplished by Fawcett and the Fawcett Company were the result of a fraudulent scheme and conspiracy contrived and planned by Fawcett and the directors of the Fawcett Company whereby they proposed to divest Fawcett and the Fawcett Company of ownership of the described properties for the purpose of concealing the same and of preventing plaintiff from collecting the amounts represented by the aforementioned judgments and in furtherance of said scheme and plan Fawcett and the directors of said Fawcett Company first caused the Sunset Farms, Inc., to be incorporated in the state of Nevada, in which state the owners of stock in corporations are free from personal liability; that they then assigned and conveyed the California property of Fawcett and the Fawcett Company to the Nevada corporation; that at the time of such transfers Fawcett and the Fawcett Company were insolvent and are now insolvent; that on September 3, 1932, Fawcett and the Fawcett Company vacated the premises and surrendered possession of the personal property to Sunset Farms, Inc.; that the various transfers and conveyances were and each thereof was fraudulently made without any consideration and as part of the plan for the consummation of the fraud sought to be perpetrated upon plaintiff; that Sunset Farms, Inc., was incorporated with three dummy directors who had no financial interest in said corporation; that in October, 1932, Fawcett, who is president of Fawcett Company, was elected president of Sunset Farms, Inc., and ever since the date of his election has acted in such capacity at a specified salary; that the vice-president of Fawcett Company has at all times since October, 1932, been in the employ of Sunset Farms, Inc., as manager of its farming operations at a specified remuneration; that the leases of real property executed by Fawcett Company were so planned and executed that the lessee should be able to retain possession of the demised premises for a period of 20 years without any rent being paid to the owner; that plaintiff is the owner of the land formerly owned by Fawcett Company in Imperial County and the leases of said property executed by the Fawcett Company are unfair, unjust and

onerous, and were made as a part of the aforementioned plan for the purpose of fraudulently preventing plaintiff from securing any rentals or other returns from said real property; that at all times since October, 1932, the Sunset Farms, Inc., has maintained its offices in the same rooms in the same building where the business of Fawcett and Fawcett Company was and is being transacted and where the officers of said Fawcett Company had their quarters, and the Sunset Farms, Inc., has at all times since said date used the same equipment, paraphernalia and warehouse facilities that were formerly used by Fawcett and Fawcett Company in carrying on their respective business; that plaintiff is informed and believes that Sunset Farms, Inc., has at all times since October, 1932, been using and is using the files and lists of customers of Fawcett and Fawcett Company and that Sunset Farms, Inc., has proceeded to transact business with the same dealers and brokers formerly employed by Fawcett and Fawcett Company and that the eastern connections of the Nevada corporation are substantially the same as those of Fawcett and Fawcett Company; that Sunset Farms, Inc., since October, 1932, has been carrying on and conducting the identical business formerly conducted by Fawcett and Fawcett Company and solely with their assets; that ever since the incorporation of the Nevada corporation it has conducted its business under the control, direction, and domination of Fawcett and in his private residence; that Fawcett is a director and president and general manager of Sunset Farms, Inc., and is in complete control of said Nevada corporation, the two other directors thereof being dummy directors who are not financially interested in said corporation; that Sunset Farms, Inc., is carrying on its farming operations on the same properties formerly owned by Fawcett and Fawcett Company and is using the same equipment, machinery, livestock, supplies and trademark formerly owned by Fawcett Company and Fawcett; that Sunset Farms, Inc., is a fraudulent reorganization of Fawcett and Fawcett Company and is growing certain designated crops on the various lands formerly owned and leased by Fawcett and Fawcett Company; that by reason of the fraud and the above-described fraudulent scheme and conspiracy Sunset Farms, Inc., is harvesting and will harvest and market the crops which are being grown and will receive and conceal and sequester the

proceeds therefrom so that plaintiff will be prevented from recovering the same to apply on his judgments against Fawcett and Fawcett Company; that because of the fraud and conspiracy a receiver should be appointed to take possession of all the described real and personal property of Sunset Farms, Inc., and of the growing crops, and harvest and market the same and make an accounting to the court and to pay over to plaintiff the proceeds to apply on his judgments against Fawcett and Fawcett Company. The second cause of action of said complaint alleges that Fawcett and the Fawcett Company transferred the above-mentioned personal property and conveyed, leased and encumbered the real property voluntarily and while they were insolvent and with the intent to hinder, delay and defraud their creditors, especially the plaintiff, and that at all times subsequent to such transfers, conveyances and leases, Fawcett and Fawcett Company have been and are now insolvent. The third cause of action alleges that Sunset Farms, Inc., by reason of the nonpayment of the judgments obtained against Fawcett and Fawcett Company, is indebted to plaintiff in the total amount represented by said judgments.

In contending that the above-described allegations did not justify the respondent court in employing so drastic an instrumentality as a receivership, petitioner relies upon the established principle that a court of equity will not appoint a receiver of the property of a corporation in aid of an action prosecuted against a corporation by a private person whether such person be a stockholder in the corporation or merely a creditor. This rule was clearly announced in the *French Bank Case*, 53 Cal. 495, wherein it was pointed out that the power of a court of equity to appoint a receiver in such a case must be established by statute and that the only statute which could be relied upon as conferring such authority is the 5th subdivision of section 564 of the Code of Civil Procedure, which provides for the appointment of a receiver in a pending action "in cases when a corporation has been dissolved, or is insolvent, or in imminent danger of insolvency, or has forfeited its corporate rights". It was, however, declared that the authority of the court to appoint a receiver necessarily presupposes that there is pending before the court an action instituted by someone authorized by law to commence

it but that there is no statute which undertakes to confer upon a private person, either as stockholder or creditor, the right to maintain an action to dissolve a corporation on the ground that it is insolvent or to obtain relief by seizing its property out of the hands of its constituted management and placing it in a receiver's hands. The general rule thus announced has been followed in a line of later decisions in California, among which may be noted the following: *Havemeyer* v. *Superior Court*, 84 Cal. 327 [24 Pac. 121, 18 Am. St. Rep. 192, 10 L. R. A. 627]; *Fischer* v. *Superior Court*, 110 Cal. 129 [42 Pac. 561]; *Elliott* v. *Superior Court*, 168 Cal. 727 [145 Pac. 101]; *A. G. Col Co.* v. *Superior Court*, 196 Cal. 604 [238 Pac. 926]; *Hobson* v. *Pacific States Mercantile Co.*, 5 Cal. App. 94 [89 Pac. 866]; *Moore* v. *Superior Court*, 127 Cal. App. 692 [16 Pac. (2d) 324]. The general rule which, in the final analysis, is based on the concern of the law for corporate business welfare is not, however, so rigid as to permit of no exception. This was at least intimated in *A. G. Col Co.* v. *Superior Court, supra*, where, at page 613 of the opinion, it is said that the appointment of a receiver for a corporation on an *ex parte* application is so dangerous an expedient that it should be done only in cases of the greatest emergency and where, without such appointment, irreparable injury will unquestionably result.

The respondent maintains that a case of this sort was here presented and that consequently the order of appointment should not be annulled by this proceeding. Its contention in this regard is based on the premise that the verified complaint in the receivership action showed that the incorporation of petitioner was an integral part of the fraudulent plan concocted by Will S. Fawcett and the directors of the Will S. Fawcett Company to render impossible the collection of the judgments obtained against these parties by the plaintiff in said receivership action and that petitioner's corporate identity was simply a convenient mask assumed by Fawcett and the directors of the California corporation to assist them in the perpetration of their fraudulent scheme. The essential element of this contention is that the facts set out in the complaint in the receivership action demonstrate that petitioner is the *alter ego* of Will S. Fawcett.

It is no new doctrine that a court of equity will on a proper occasion disregard the legal fiction of separate corporate existence. It was done, for example, in the following cases: *Stanford Hotel Co.* v. *M. Schwind Co.*, 180 Cal. 348 [181 Pac. 780]; *Minifie* v. *Rowley*, 187 Cal. 481 [202 Pac. 673]; *Meizlisch* v. *San Francisco Wool etc. Co.*, 213 Cal. 668 [3 Pac. (2d) 310]; *Patents Process Inc.* v. *Superior Court*, 101 Cal. App. 541 [282 Pac. 21]; *Mirabito* v. *San Francisco Dairy Co.*, 8 Cal. App. (2d) 54 [47 Pac. (2d) 530]. In *Minifie* v. *Rowley, supra,* at page 487, it is declared that "before the acts and obligations of a corporation can be legally recognized as those of a particular person, and *vice versa,* the following combination of circumstances must be made to appear: First, that the corporation is not only influenced and governed by that person, but that there is such a unity of interest and ownership that the individuality, or separateness, of the said person and corporation has ceased; second, that the facts are such that an adherence to the fiction of the separate existence of the corporation would, under the particular circumstances, sanction a fraud or promote injustice."

In its contention that respondent was not justified in disregarding the separate corporate existence of itself petitioner stresses the necessity of a showing of unity of interest and ownership and maintains that it has not been made to appear that there is such unity that the separateness of itself and Will S. Fawcett and the Fawcett Company has ceased. As heretofore noted, the verified complaint in the receivership action alleges that Fawcett and the directors of the California corporation, Fawcett Company, contrived and planned a fraudulent scheme for the purpose of preventing the plaintiff in said action from collecting the judgments which he had obtained against Fawcett and the Fawcett Company and to further this scheme they first caused petitioner to be incorporated in Nevada with three dummy directors who had no financial interest in the corporation and, both Fawcett and the Fawcett Company being then insolvent, they next transferred and conveyed various real and personal property and assets in California without receiving any consideration therefor to petitioner and surrendered possession of such property and assets to petitioner and that Fawcett, who is the president of Fawcett Company, became president of petitioner

shortly after the incorporation of petitioner. It is then alleged that petitioner at all times since October, 1932, has maintained its offices in the same rooms in the same building wherein the offices and business of Fawcett and Fawcett Company are located; that petitioner since said date has used the same equipment, warehouse facilities, paraphernalia, and other property theretofore used by Fawcett and Fawcett Company in the transaction of their respective business and on information and belief it is alleged that since said date petitioner has used the files and lists of customers of Fawcett and Fawcett Company and has carried on its business through the same dealers and with substantially the same eastern connections as those of Fawcett and Fawcett Company. It is further alleged that petitioner is conducting the identical business formerly conducted by Fawcett and Fawcett Company; that ever since the incorporation of petitioner it has carried on its business in Fawcett's private residence under his control and domination and that Fawcett, who is director, president and manager of petitioner, has complete control of petitioner, there being only two other directors who are mere dummies without any financial interest in the corporation. It is finally alleged that petitioner is a fraudulent reorganization of Fawcett and Fawcett Company.

We think the above-described allegations amply justified the respondent in disregarding petitioner's separate corporate identity (*Stanford Hotel Co.* v. *Schwind, supra; Meizlisch* v. *San Francisco Wool etc. Co., supra*).

In its insistent contention upon strict adherence to the doctrine of unity of interest and ownership announced in *Minifie* v. *Rowley, supra,* petitioner points to the allegations of its petition wherein it is stated that at all times since its incorporation petitioner has had issued and outstanding 11,884 shares of preferred and 2,100 shares of common stock; that 1100 shares of the latter were issued to Clarence M. Bjerke and 1,000 shares to Jud R. Rush and that 3,000 shares of the former stock were issued to Hazel F. Bjerke, 3,000 shares to Fawcett, and 5,884 shares to the Fawcett Company all of said stock being issued upon the payment to petitioner of designated consideration. These allegations, it is declared, effectually negative the existence of unity of ownership between Fawcett and Fawcett Company and petitioner since

it is thus shown that all of the common stock of petitioner is owned by strangers and 3,000 shares, more than one-fourth of the preferred, is owned by someone other than Fawcett or the Fawcett Company. However, so far as this proceeding is concerned, we are not limited to the allegations of the petition. Respondent has answered the petition and by this pleading it appears that Hazel F. Bjerke is the daughter of Will S. Fawcett, Clarence M. Bjerke is Fawcett's son-in-law, and Jud R. Rush is now and for many years has been Fawcett's personal attorney and that he has never attended a stockholders' meeting of petitioner, but has at all times appointed Clarence M. Bjerke his proxy and attorney in fact to represent him at such stockholders' meetings. It is also alleged that Will S. Fawcett has been the sole stockholder of Will S. Fawcett Company except for a negligible number of shares issued to members of his family and trusted employees of Fawcett and that at all times since its incorporation the company has been the *alter ego* of Fawcett. These allegations indicate that, notwithstanding the ownership of a considerable quantity of petitioner's stock by apparent strangers, these owners were by no means independent stock owners but, on the contrary, are members of Fawcett's family or, in the case of Jud R. Rush, Fawcett's personal attorney. Other allegations of the answer demonstrate that petitioner was controlled and dominated by Will S. Fawcett. We do not understand that by "Unity of Interest and Ownership" it is meant that every share of stock in the corporation must be owned by the individual who is masquerading under the legal fiction of separate corporate identity in order to justify a court of equity in stripping away the mask particularly when it appears that the mask is being used as a convenient instrumentality for the perpetration of fraud. It was not so decided in *Meizlisch* v. *San Francisco Wool etc. Co., supra,* where it appeared that the principal stockholder of the corporation was the daughter of the man who attempted to hide behind the mask of separate corporate identity. It was not so held in *Minifie* v. *Rowley, supra,* for it was there shown that not all of the stock of the corporation was owned by the individual who relied on the separate identity of the corporation to protect him in an action brought to recover payment of a promissory note.

It is therefore our conclusion that petitioner's above-mentioned contention is not sustainable.

■ Petitioner further contends that the appointment of the receiver was clearly erroneous for the reason that the plaintiff in the receivership action possessed other remedies which would have afforded ample protection and that therefore resort to the drastic remedy of receivership was not justified. It is suggested, for example, that the remedy of *lis pendens* was entirely adequate. With this we cannot agree. The recordation of a notice of *lis pendens* might have protected the plaintiff against an actual transfer of the real property. It would certainly not have prevented petitioner and the other defendants in the receivership action from removing the proceeds of petitioner's business from the jurisdiction of the respondent court. It is also suggested that an injunction would have sufficiently protected plaintiff and that the expense and annoyance of a receivership could have been thus avoided. ■ The rule is established that the appointment of a receiver rests largely in the discretion of the trial court and that its action in appointing a receiver or its refusal of an application for the appointment of such an officer will not be disturbed in the absence of a showing that the court's discretion has been abused (*Woodland* v. *Heron,* 120 Cal. 614 [52 Pac. 1006]; *Anderson* v. *Anderson,* 124 Cal. 48 [56 Pac. 630, 57 Pac. 81, 71 Am. St. Rep. 17]; *Davies* v. *Ramsdell,* 40 Cal. App. 432 [183 Pac. 702]; *Fox* v. *Flood,* 44 Cal. App. 786 [187 Pac. 68]; *Brush* v. *Apartment & Hotel F. Corp.,* 82 Cal. App. 723 [256 Pac. 285].) The facts and circumstances which are disclosed by the petition and respondent's answer thereto do not, in our opinion, indicate such abuse of discretion that we find ourselves impelled to disturb the trial court's order on the ground suggested.

It is further urged that the scope of the order of appointment is so far in excess of that which was demanded in the complaint that the jurisdiction of respondent was manifestly exceeded by the making of the order which is therefore void and should be annulled by this proceeding. In this connection it is pointed out that the complaint in the receivership action prayed merely for the appointment of a receiver who should take possession of the real and personal property of petitioner described in the pleading, whereas the order that

was made and which is here attacked appointed a receiver of the petitioner corporation and of all the property and assets of petitioner of whatever kind and description and wherever situated.

The broad provisions of the order leave no doubt that the receiver therein named was appointed for petitioner and was authorized and directed to take possession of all the property and assets of petitioner and to manage and control the entire business theretofore conducted by petitioner. The expansiveness of its scope would therefore appear to render it vulnerable to attack on the basis of the general rule heretofore mentioned, viz., that a receiver may not be appointed in a suit by a creditor to take over the entire business of a corporation and thus to usurp the functions of its regularly constituted officers and directors. However, if it sufficiently appears that the corporation is merely the *alter ego* of an individual and that the separate identity of corporate entity was fabricated and assumed for the purpose of perpetrating a fraud, a court of equity is justified in disregarding the corporate fiction in order to reach the individual and fasten upon him liability for his fraudulent action.

In this proceeding, although the apparent scope of the order is so broad as to indicate excess of jurisdiction, the facts and circumstances justify respondent's action in appointing a receiver for petitioner's entire business. So far as appears this business was carried on exclusively in the state of California under the domination and control and active management of Will S. Fawcett. Petitioner carried on no business in the state of Nevada. It was evidently organized for the express purpose of taking over the business which had theretofore been conducted by Fawcett and the Fawcett Company which he owned and controlled. It was therefore in effect a reorganization of Fawcett and Fawcett Company and the convenient instrumentality of separate corporate identity was employed for the purpose of preventing or at least hampering and obstructing a judgment creditor of Fawcett and Fawcett Company in his efforts to enforce collection of the large indebtedness specified in the judgments.

The objection that the scope of the order exceeds the prayer of the complaint is not literally sustained by the terms of the pleading. While it is true, as contended by petitioner,

that it is alleged "that by reason of the fraud and conspiracy as herein alleged a receiver should be appointed to take possession of all the real and personal property hereinbefore described" which would apparently limit the plaintiff's request to the appointment of a receiver for specifically described property the allegation does not stop there but continues as follows: "and other properties of Sunset Farms, Inc.". Furthermore, the prayer of the complaint, so far as receivership is concerned, is: "That a receiver be appointed to take over the property of the defendant, Sunset Farms, Inc., pending the termination of this action." The order that was made was in compliance with the prayer.

Finally, even if it be assumed that the order was unduly extensive, petitioner has available a convenient, adequate and speedy remedy through the medium of an application addressed to respondent for the modification of the order.

For the reasons herein stated the order to show. cause is discharged and the writ of prohibition is denied.

Barnard, P. J., and Marks, J., concurred.

An application by petitioner to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on December 5, 1935.