[S. F. No. 15971. Department One.—March 31, 1941.]

A. L. WISEMAN et al., Plaintiffs and Appellants, v. SIERRA HIGHLAND MINING COMPANY (a Corporation) et al., Respondents; JULIA M. THORNE et al., Interveners and Appellants.

Paul C. Thorne, *in pro. per.*, and William F. Rose for Appellants.

J. B. Zimdars for Respondents.

SHENK, J.—This action was brought by the plaintiffs, claiming to be minority stockholders in the defendant corporations, to quiet title to gold mining claims in Sierra County, to declare a trust, to obtain an accounting, for injunctive relief, and for the appointment of a receiver to sell the corporate property and wind up the corporate affairs. Other alleged minority stockholders intervened in the action, seeking the same relief and, in addition, a judgment against defendant E. Morris Vail, alleged to be the *alter ego* of the corporate defendants. A change of venue was ordered to the Superior Court in and for the City and County of San Francisco. Judgment was entered in favor of the defendants, against the plaintiffs and the interveners. The plaintiffs and the interveners appealed. The plaintiffs have requested that their appeal be dismissed, and the only question presented is whether the court correctly concluded that the interveners were not entitled to relief. The facts found by the trial court are without substantial dispute.

In 1920, Sierra Poorman Mining Company owned 14 mining claims in Sierra County. In that year intervener Paul C. Thorne obtained an option to purchase those claims

for $25,000. He procured $5,000 from the plaintiff Wiseman for a promise to issue to him 50,000 shares of promotion stock in a corporation to be organized under the name of Sierra Highland Mining Co. He was also paid $4,000 by intervener Mary L. Roberts for promotion stock, and certain sums by other persons on similar promises. On December 1, 1921, Mr. Thorne organized the Sierra Highland Mining Co., a domestic corporation, with $1,500,000 capital, divided into 1,500,000 shares at $1 each. To this corporation Mr. Thorne transferred the option to purchase the 14 claims from the Sierra Poorman Mining Co. For the transfer of the option he took 50,000 shares of promotion stock. During this period Mr. Thorne, with the assistance of engineers, located and filed claims to 20 additional mining properties in the vicinity of the Sierra Poorman claims. He transferred these additional claims to the Sierra Highland Mining Company for 600,000 shares of promotion stock. The original permit issued by the corporation commissioner authorized 100,500 shares to be sold at $1 per share, which by amended permits was reduced to 100,000 shares at $0.50 per share. Other provisions related to the issuance of a proportion of the promotion stock to Paul C. Thorne, the balance to be held subject to the commission's order. The effectiveness of the permit was made dependent upon the corporation's ownership of the mining properties fully paid for and unencumbered.

A final payment of $20,750 on the purchase price of the Poorman claims was to become due on August 1, 1923. Some time prior to that date Mr. Thorne importuned the defendant E. Morris Vail to come into the company. Mr. Vail refused until a new agreement should be obtained providing for monthly payments on the balance due to the Poorman Company. With two others he advanced two monthly payments and joined Thorne in the effort to sell stock. Mr. Vail then discovered the limitation in the amended permit and ceased stock selling operations until payment of the option purchase price was completed. He became a member of the board of directors and, with Mr. Seyms as secretary, undertook the management of the company. He personally financed its operations, advanced moneys to pay for the properties, satisfied judgments, tax claims and other obligations. On February 28, 1928, the permit to issue or sell stock was withdrawn.

In 1929, Mr. Vail and Mr. Thorne discussed a plan to lease the property and form a new corporation to take over the lease. They agreed to present that plan to the board of directors for consideration. At the subsequent meeting of the board, Mr. Thorne had ready for presentation to the directors a lease running to his nominee, Mr. Goard. Through a committee the board investigated and rejected the lease. Mr. Vail thereupon submitted a 15 year lease running to himself as lessee, with an additional feature calling for an option to purchase at a price of $200,000. After consideration the directors accepted this lease. A company called Western Investment Development Company was organized in Nevada, capitalized at $50,000, divided into 5,000,000 shares at 1 cent each, 3,500,000 of which were designated as Class A, and 1,500,000 as Class B, the latter having exclusive voting power, but both classes participating in distribution of profits. Mr. Vail's lease with the Sierra Highland Mining Company was assigned to that company. In return therefor Mr. Vail received 700,000 shares Class A stock at ten cents, with 15 cents additional subject to call, and 850,000 shares of Class B stock, together with an option for 100,000 shares of Class A for cash at 25 cents or to exchange for 50,000 shares of Sierra Highland Mining Company treasury stock at 50 cents. Seventy-five per cent of the rights to promotion stock of the Sierra Highland Mining Company were acquired by exchange for stock in the Nevada corporation and assigned to the latter corporation. Of the 50,000 shares of issued stock of Sierra Highland Mining Company 37,260 shares were acquired by the Western Investment Development Company in exchange for its fully paid Class A stock. At the time of trial there was outstanding an additional block of 80,000 shares of Class A stock, on which 15 cents per share or $12,000, was callable.

Subleases of the properties were made, including a lease to one Ulin and his associates. Subsequently, and in 1932, the exercise of the corporate rights and privileges of the Sierra Highland Mining Company was suspended for non-payment of the California Franchise Tax.

Various sublessees, including Ulin, jumped or attempted to jump or re-locate the claims. All of the claims were recovered, with the exception of one considered worthless, and were held by Vail in his own name. Title to the claims was

cleared, except as against the asserted interests of Ulin and his associates. Vail held title to the recovered claims in trust for the company. Vail also obtained a deed in his own name to certain lands and a natural water basin thereon designated as Lake Hawley, the rights to the waters of which Thorne had formerly attempted to acquire. Vail held the deed to Lake Hawley for the use and account of the company and had applied to the appropriate department for a permit to use the waters in the operation of the mining claims. At the trial it appeared that a sale of the mining claims or the lease, or the financing of the mining operations, could not be consummated until the title was cleared of the claims of others.

Until 1932 Vail drew $75 a month from the company or was given a credit for that amount, for services as manager and for office expenses; and Seyms, as secretary, drew similarly $25 per month. No salary was drawn or charged by either of them subsequent to that year. About the time the present action was commenced in July, 1936, there was due to Vail for advances and salary, less amounts received in stock, the sum of $30,785.08; to Seyms, $4,392.50, and to a Mr. Catto, $1803.87. After the commencement of the action suit was brought in Catto's name and a judgment recovered on the foregoing obligations, which, however, the parties agreed to have satisfied only out of the first net profits from mining operations or in stock of the company.

In December, 1939, after the filing of the appellants' opening brief, the plaintiffs, as above stated, requested the dismissal of their appeal. The prosecution of the appeal was continued on behalf of the interveners, who will be referred to as the appellants.

The appellants had not exchanged their rights to promotion stock of Sierra Highland Mining Company for stock in the Western Investment Development Company. Julia M. Thorne, the wife of Paul C. Thorne, held so-called rights to 120,000 shares of Sierra Highland Mining Company, assigned to her by her husband. Paul C. Thorne, who was a director of the Sierra Highland Mining Co., retained only 100 qualifying shares. Mary L. Roberts held 300 shares of that company and rights to some 30,000 shares, for which she paid $4,000 to Mr. Thorne. The appellants were not stockholders in the Nevada corporation.

Vail at the time of trial held 4,985 shares of Sierra Highland Mining Company stock, and 648,000 shares of Class A and 349,250 shares of Class B stock of the Nevada corporation, and a claim for $30,785.08 against the company. Defendant Seyms held 225 shares of the Sierra Highland Mining Company stock, 22,500 Class B and 2,300 Class A shares of the Nevada corporation, with a claim against the Sierra Highland Mining Company for $4,392.50. Defendant C. W. Whitney owned 100 shares of Sierra Highland Mining Company stock, and 4,000 shares Class B stock of the Nevada corporation. Defendant H. H. Linney owned 100 shares of Sierra Highland Mining Company stock and 4,000 Class B shares of the Nevada corporation. P. W. King owned 100 shares of the Sierra Highland Mining Company and 16,000 Class B and 3,800 Class A stock of the Nevada corporation. James Catto held a claim for $1803.87 against the California corporation. There remained in the treasury of the Nevada corporation unissued 2,725,680 shares of Class A and 650,000 shares of Class B stock.

On the charges of domination and fraud on the part of the defendants and especially the defendant Vail, the court found that the agreement of the claimants Vail, Seyms and Catto to look to payment of their claims from royalties and sales of stock had not been repudiated but was in full force and effect; that the Sierra Highland Mining Company was the owner of the mining properties which were the subject of the lease assigned by Vail to Western Investment Development Company, and that all the necessary assessment work had been done thereon; that since 1932 defendants Vail and Seyms had given their services as manager and secretary to the defendant corporations without charge; that Vail and Seyms, in addition to their claims above mentioned, invested, respectively, $16,910 and $862.50 in stock; that Vail was holding the deed to land and waters of Lake Hawley for the Nevada corporation's account and had made application for the use of the waters on the mining property; that Vail and Seyms and the other directors of the corporations have carried on the business of the corporations as directors and as trustees in a proper and lawful manner and as required of them as directors and trustees; that none of them acted dishonestly or fraudulently in any of the transactions involved nor had any of them manipulated the interests or properties of the corporation for his

own benefit or enrichment to the detriment of the corporations or any of the stockholders thereof; that the directors had been free to act independently and were not dominated by Vail; that the lease to Vail assigned to Western Investment Development Company was not a fraud or imposition upon anyone and was not made for the purpose of cheating or defrauding anybody and that no one had been cheated or defrauded thereby; that the incorporation of Western Investment Development Company was not for the purpose of defrauding anyone, but that its purpose was to facilitate the financing and operation of the properties; that Vail had not exercised any control or domination except such as his official position and his stock interests lawfully entitled him to exercise, and that all of his dealings were entirely for the benefit of the corporations and the enterprise, and that none who exchanged stock or rights in the Sierra Highland Mining Company for stock in the Western Investment Development Company had been defrauded thereby; that defendant Vail made no false or fraudulent representations to anyone in connection with the enterprise or sales or transfers of stock; that Vail and Seyms honestly conducted the affairs of the companies and fully and fairly accounted for all moneys received or disbursed, and for all of their acts in the management of the affairs thereof; that they were fully competent to manage the affairs of the companies; that it was not necessary to restrain or enjoin anyone in the management thereof. The court concluded that plaintiffs and interveners were not entitled to any of the relief sought by them.

It is claimed by the appellants that the evidence does not support the findings and that an affirmance of the judgment would have the effect of upholding illegal corporate acts, alleged to be the transaction of business in this state by the Nevada corporation without first obtaining the requisite permit. The evidence shows, however, that the lease to Vail was executed by the Sierra Highland Mining Company before the exercise of its rights and privileges was declared to be suspended pursuant to the statute. There was no showing pertinent to this case that the Nevada corporation was exercising any of its rights or privileges in this state. After the suspension of the franchise of the California corporation, its directors became trustees to wind up its business. (*Rossi* v. *Caire*, 174 Cal. 74 [161 Pac. 1161]; *Turney* v. *Morrissey*, 22

Cal. App. 271 [134 Pac. 335].) It is the general rule, with certain exceptions not applicable here, that the courts have no jurisdiction to restrain the operations of corporations or to wind up their affairs or to appoint a receiver for that purpose in a suit by a private person. (*Neall* v. *Hill,* 16 Cal. 145, 146 [76 Am. Dec. 508] ; *La Societe Francaise D'Epargnes* v. *District Court,* 53 Cal. 495; *Fischer* v. *Superior Court,* 110 Cal. 129 [42 Pac. 561] ; *Elliott* v. *Superior Court,* 168 Cal. 727 [145 Pac. 101] ; *Taylor* v. *Exnicious,* 197 Cal. 443 [241 Pac. 397] ; *Hatfield* v. *People's Water Co.,* 25 Cal. App. 502 [144 Pac. 300].) The power of the directors as trustees of the assets of the California corporation includes the power to sell the corporate property whenever in their judgment it becomes necessary for the settlement of the corporate affairs. (*Anthony* v. *Janssen,* 183 Cal. 329, 334 [191 Pac. 538].)

 It is not seriously claimed by the appellants that the court had jurisdiction to enjoin any of the acts of the defendants either as directors or trustees of the California corporation, or as directors of the Nevada corporation, regardless of where it transacted its business, in the absence of a showing of fraud on the part of the defendants, and the appellants present no authority that in the absence of fraud the court may act under the circumstances here involved. The appellants attempt to fasten liability upon the defendant Vail by charging that the evidence shows that Vail was the *alter ego* of the corporations and that he used the corporate entities for his own enrichment to the detriment of the other stockholders. The only pertinent issue which, if proved, would entitle the plaintiffs to the relief sought, is that of fraud on the part of the defendants. The mere fact that the Western Investment Development Company owned 75 per cent of the outstanding stock and rights in the Sierra Highland Mining Company, and that Vail owned a large majority of the outstanding stock of the former corporation, would not place the stamp of fraud on activities which in fact, as the court found, were not consummated for a dishonest or fraudulent purpose. In their reliance on the *alter ego* doctrine to support their contentions of fraud, the interveners cite and quote from *Clark* v. *Millsap,* 197 Cal. 765, 781 [242 Pac. 918] ; *Sunset Farms, Inc.,* v. *Superior Court,* 9 Cal. App. (2d) 389, 406 [50 Pac. (2d) 106, and other cases. In such cases the courts have recognized that fraud must be proved before relief may be

accorded; that the mere fact that a corporation is the *alter ego* of an individual is not sufficient, but that when it is shown that the separate entity was "fabricated and assumed for the purpose of perpetrating a fraud, a court of equity is justified in disregarding the corporate fiction in order to reach the individual and fasten upon him liability for his fraudulent action." (*Sunset Farms, Inc.,* v. *Superior Court, supra.*) Corporations cannot be used as cover for fraud and the court will look through the form of the corporate entity to ascertain its actual purpose and intent. (*Clark* v. *Millsap, supra.*) The trial court has looked through the form of the corporate entity. It found the intent and purpose of the defendants to be free from the fraud charged by the appellants. Before the acts and obligations of a corporation may be recognized as those of a particular person under the *alter ego* doctrine, it must be shown that an adherence to the corporate entity under the particular circumstances would sanction a fraud or promote injustice. (*Minifie* v. *Rowley,* 187 Cal. 481, 487 [202 Pac. 673] ; *Sunset Farms, Inc.,* v. *Superior Court, supra.*) In this case the court was justified in concluding in effect that the delay in the sale of the corporate properties was due to the depressed state of the market and otherwise to circumstances beyond the control of the defendants; likewise that the directors and trustees were not guilty of any breach or dereliction of duty or any fraud so as to entitle the appellants to relief.

Pursuant to their request, the appeal of the plaintiffs is dismissed. The judgment against the interveners is affirmed.

Carter, J., and Edmonds, J., concurred.