[Civ. No. 52.   Fourth Appellate District.—January 8, 1930.]

V. A. TYLER et al., Respondents, v. PARK RIDGE COUNTRY CLUB (a Corporation), Appellant.

Edward T. Sherer, Welburn Mayock and Charles W. Cradick for Appellant.

Sarau & Thompson, Henry G. Bodkin and A. G. Ritter for Respondents.

SLOANE, P. J.—The plaintiffs are holders of membership privileges in the defendant Park Ridge Country Club, a corporation organized for and engaged in the business of promoting and furnishing to such membership participants, facilities for outdoor sports and the enjoyment of social intercourse and good fellowship.

Plaintiffs brought this action for themselves and other membership participants, to prevent the corporation and its directors from diverting the service of the club from the exclusive use of the members of the Caucasian race, and from selling its stock and extending its privileges to members of the negro race.

The action is brought and maintained under a complaint in equity, asking the appointment of a receiver to conduct and administer the affairs of the corporation in the protection of the exclusive rights of the Caucasians to its privileges. The court made the order appointing a receiver on an *ex parte* application upon the complaint filed herein, and without notice to the defendants.

The complaint alleges in part as follows:

"IV.

"That the membership in said club is by the by-laws limited to members of the Caucasian race and that no other person than a member of the Caucasian race is entitled to become a member of said club under the terms of the by-laws in existence at the time that the plaintiffs herein were induced to and did become members of said club, and at the present time.

"V.

"That at the present time there are approximately 500 members in good standing and unsuspended from said club

and all of said members are entitled to all of the privileges of said club and each and every of the members are of the Caucasian race.

"VI.

"That by and according to the by-laws of said club the persons holding membership privileges therein are not entitled to voting power in the conduct of said club or of said corporation, nor in amending or changing in any manner the by-laws of said club.

"VII.

"That by and according to the articles of incorporation of said club and the by-laws now in full force and effect, the directors of said club and the owners of the stock therein have the sole right to amend the by-laws and to provide for the making of rules and regulations for the conduct of such club and the members thereof.

"VIII.

"That such directors and stockholders have the sole and exclusive right to amend said by-laws so as to provide that membership in said club shall not be limited to members of the Caucasian race and said directors and stockholders have it within their power to amend said by-laws so as to provide that members of the negro race may be entitled to full membership in said club and to enjoy all the privileges and rights now enjoyed by the plaintiffs herein.

"IX.

"That the by-laws of said corporation further provide that the board of directors may by majority vote extend the privileges and courtesies of the club, without charge, to any person or persons for a period not exceeding three months.

"X.

"That the by-laws of said club further provide that the board of directors shall elect new members and that two negative votes of the board of directors shall be sufficient to reject any candidate and the membership of said club has no right whatsoever to pass upon said proposed membership."

The complaint contains further allegations indicating that the present membership acquired its rights in reliance upon the existing race restrictions, and that an extension of membership rights or vesting the control of the corporation to

negroes, would destroy the value and availability of the club to its present membership, and render its further operation impracticable.

This result may readily be conceded. We have not reached a point in race assimilation where a social club of this character could function with a participating membership half white and half black, or where the two races are brought into contact on a basis of social equality. This would be true, whether the organization was originally wholly white or wholly black.

The question on this appeal is as to whether or not the situation affords the plaintiffs any relief, and particularly the relief they are seeking to maintain.

In the first place the charter and by-laws of the corporation, as pleaded by the plaintiffs, are not consistent with their demands. As set forth in the portions of the complaint above quoted, the by-laws provide that persons holding membership privileges "are not entitled to voting power in the conduct of said club or of said corporation, nor in amending or changing in any manner the by-laws of said club"; that "by and according to the articles of incorporation of said club, and the by-laws now in full force and effect, the directors of said club, and the owners of the stock therein, have the sole right to amend the by-laws and to provide for the making of rules and regulations for the conduct of said club and the members thereof"; that such directors and stockholders "have the exclusive right to amend said by-laws so as to provide that memberships in said club shall not be limited to members of the Caucasian race, and said directors and stockholders have it within their power to amend said by-laws so as to provide that members of the negro race may be entitled to full membership in said club, and to enjoy all the privileges and rights now enjoyed by the plaintiffs herein"; that "the by-laws of said corporation further provide that the board of directors may by a majority vote, extend the privileges and courtesies of the club without charge to any person or persons for a period not exceeding three months."

When the fundamental laws adopted by the corporation for its government, and subject to which the plaintiffs and others whom they represent, presumptively accepted membership privileges, thus vests the exclusive right

to remove all race restrictions, how can the courts, either through a receivership or even by injunction, prevent the stockholders and legally constituted directors of the corporation from exercising the powers thus expressly conferred upon them—powers of which the present membership had notice when they entered into · this partnership relation? However disastrous to the interests of the present membership the adoption of such a course may be, there is nothing illegal about it where the organic laws of the corporation have authorized such procedure.

Appellants further dispute the power of the court to create this receivership, taking from the corporate directors the management and control of all the corporate affairs, and vesting the entire management in a receiver, upon an *ex parte* application, and without notice, and particularly upon a petition which is verified as to many of the essential allegations only on information and belief. The allegation that the owners of the capital stock of the corporation intend to sell their stock to negroes is made on information and belief. The allegation that Dan Gilkey, the principal stockholder, is insolvent, is made upon information and belief. The allegation that the purpose of the transfer of stock to negroes is to enable the negroes to force the present members to sacrifice their membership rather than to maintain a membership in a club owned and operated by negroes, is made on information and belief. The allegation that the present owners and directors are about to amend the by-laws of the corporation so as to enable members of the negro race to become participating members, is made on information and belief.

There is a direct allegation that the club-house and grounds have been neglected, and that if the neglect is continued great and irreparable injury will result, but there is no allegation that such neglect will continue or is threatened, or that any great or irreparable injury would result to plaintiffs before the application for a receivership could be heard on notice.

There is no direct statutory limitation as to the showing of irreparable injury required in such a case, but the rule contended for by appellant is sustained by the decisions in this state. As is said in *Fischer* v. *Superior Court*, 110 Cal. 129, 138 [42 Pac. 561, 562] :

"The general rule, no doubt, is that so harsh a measure as the appointment of a receiver to take property out of one's possession without trial will not be indulged in by a court without previous notice to the defendant. It would be unjustifiable, except where it clearly appeared that irreparable injury would be done during the few days necessary for a hearing on notice; and even in such an extreme case, a temporary injunction would usually be sufficient. 'A motion to appoint a receiver will not be entertained unless notice has been given to the defendant, if practicable, and the appointment will not be made without notice, save in case of irreparable pending injury.' (Beach on Receivers, sec. 141, and notes.)"

In *Ryan* v. *Murphy,* 39 Cal. App. 640 [179 Pac. 517, 518], the court says:

"It is obvious that the Receiver in this case was appointed without formal notice. Such an appointment under the established law of this state can not be legally made except upon a showing of great emergency. Citing *Fischer* v. *Superior Court,* 110 Cal. 129 [42 Pac. 561]."

Again the rule is invoked that a receiver should not be appointed where a less drastic remedy would insure petitioner adequate protection. This is indicated in the decision last above quoted, where the court says:

"Moreover it may be said that the plaintiffs could (if they had not yet done so), have adequately protected their interests in the property against future alienation thereof by filing a *lis pendens.* Thus in *National Union Bank* v. *Riger,* 38 App. Div. 123 [56 N. Y. Supp. 545] which was an action by the judgment creditor to subject certain land to his claim, it was held erroneous to appoint a receiver where there was sufficient equity in the property to satisfy the judgment. The court remarked that in such a case the creditor was adequately protected by the filing of a *lis pendens.*"

The citation of *Fischer* v. *Superior Court, supra,* recognizes the same limitation where an injunction or restraining order would give adequate protection pending hearing on notice.

In *A. G. Col Co.* v. *Superior Court,* 196 Cal. 604, 613 [238 Pac. 926, 930], it is said:

"By numerous authorities, the principle is unequivocally announced that, from the standpoint of the business welfare of a defendant corporation, the appointment of a receiver on an *ex parte* application is so dangerous an expedient that it should be done only in cases of the greatest emergency and where, without such appointment, irreparable injury will unquestionably result. (*Fischer* v. *Superior Court,* 110 Cal. 129 [42 Pac. 561]; *Hobson* v. *Pacific States M. Co.,* 5 Cal. App. 94 [89 Pac. 866]; *Ryan* v. *Murphy,* 39 Cal. App. 640 [179 Pac. 517].)

"It is also a well-established rule that a receiver should not be appointed where a remedy less drastic in its nature and scope is available, and which will insure to the litigants adequate protection. . . .

" 'Where an injunction will protect all the rights of which the applicant for the appointment of a receiver appears to be entitled, a receiver will not be appointed.' (34 Cyc., p. 25; *Hickley* v. *Parrot Silver etc. Co.* [25 Mont. 164] 64 Pac. 330, and other citations.)"

In the case before us a restraining order or temporary injunction would have held up any of the proceedings by the corporation or its officers, of which plaintiffs were apprehensive, until such time as a hearing on proper notice could have been had. ■ The fact that the trial court subsequently entertained and denied a motion to vacate the order appointing a receiver, makes the unauthorized appointment no less erroneous.

■ Moreover an attempt either by appointment of a receiver or by injunction to prevent the sale or transfer of the capital stock of this corporation to members of the negro race would be in violation of the rules regulating restraints on alienation as provided by the provisions of the Civil Code, section 715 et seq., and as maintained by the decisions of our appellate courts. (*In re Walkerly,* 108 Cal. 627, 658 [49 Am. St. Rep. 97, 41 Pac. 772]; 9 Cal. Jur., pp. 352–357; *Strong* v. *Shatto,* 45 Cal. App. 29 [187 Pac. 159].)

While under the authorities in this state, contracts governing the use and occupancy of the property may be enforced, contracts limiting transfer and ownership to members of the Caucasian race are void.

For the various reasons stated, we are satisfied that the *ex parte* order appointing a receiver in this case is erroneous.

The order and judgment is reversed.

Barnard, J., and Marks, J., concurred.