[Civ. No. 12014.    First Dist., Div. One.    Aug. 31, 1942.]

PETER L. MISITA, Respondent, v. DISTILLERS COR-
PORATION, LTD. (a Corporation) et al., Appellants.

W. H. Spaulding, Keyes & Erskine and J. Benton Tulley for Appellants.

Albert Picard, Ben K. Lerer and John A. O'Kane for Respondent.

KNIGHT, J.—Defendants appeal from a series of orders made by the trial court in the matter of a receivership pendente lite.

The plaintiff in the action, Peter L. Misita, his sister Danica, and his brother Mitchell L., owned the outstanding capital stock and constituted the board of directors of Distillers Corporation, Ltd., which was engaged in the business of selling liquor, wine and tobacco, and operated three stores and a warehouse in San Francisco under the name of Martell's Wine, Liquor & Cigar Stores. Mitchell, Peter and Danica were respectively the president, vice-president and treasurer, and secretary of the company. There were 350 outstanding shares of stock of the par value of $10 a share. Mitchell owned 175 thereof, and Peter was the record owner of 116 shares, but claimed to be the beneficial owner of 59 additional shares which stood of record in Mitchell's name. The business was operated by Mitchell and Peter, the

former receiving a salary of $100 a week and the latter $80 a week. For about two years a bitter, violent quarrel had been carried on between the two brothers concerning the affairs of the corporation and the operation of the business; and on July 16, 1940, Peter filed the present action for the removal of Mitchell as a director, and for the appointment of a receiver pendente lite. He joined as parties defendant the corporation and Mitchell, individually and as president of the company. The complaint was verified, and along therewith there was filed an affidavit made by Danica, wherein she joined in the application for the appointment of a receiver. Upon the presentation of the verified complaint and the affidavits to the trial court, and on July 16, 1940, an ex parte order was granted appointing a receiver, and ordering the defendants to appear on a date specified to show cause, if any they had, why the receivership should not continue until the final termination of the action. The order appointing the receiver was made conditional that plaintiff file a bond in the sum of $5,000. Plaintiff furnished the bond, and the receiver qualified and took charge of the business, but at the end of approximately three weeks the receivership was terminated under the following circumstances: At the hearing of the order to show cause, plaintiff moved to continue the receivership, and defendants moved to vacate the appointment; numerous affidavits and counter-affidavits were introduced and considered, and on August 10, 1940, an order was made continuing the receivership pendente lite and denying defendants' motion to vacate; but immediately following the making of the order and on the same day, to wit, August 10, 1940, the parties stipulated that the receivership be terminated, that the receiver be discharged, and that an injunction pendente lite be issued whereunder the rights of the respective parties were to be governed and protected. Appropriate orders to that effect were made, and such an injunction was issued, but thereafter defendants appealed from the ex parte order of July 16, 1940, appointing the receiver, and from the order subsequently made on August 10, 1940, continuing the receivership and denying defendants' motion to vacate; also from certain orders made for the payment of the fees and expenses incurred by reason of the receivership.

Defendants state that their purpose in seeking a reversal of the two receivership orders of July 16, 1940, and August 10, 1940, is to place them in a position whereby they can sue

on the bond to recover the expenditures made and damage done by reason of the receivership. It is obvious, however, that no expenses whatever were incurred, nor any damage done, as the result of the making of the order of August 10, 1940, continuing the receivership, because, as stated, immediately after such order was made, and on the same day, on stipulation, the receivership was terminated, the receiver was discharged, and the rights of the parties were thereafter protected and the business operated under the terms of the stipulated injunction. The appeal narrows down, therefore, to the question of the validity of the order of July 16, 1940, appointing the receiver; and the determination of that question depends entirely upon the situation as presented to the trial court at the time the order was made, and eliminates from consideration the affidavits or counter-affidavits subsequently made and used at the hearing of the motions on August 10, 1940, to continue the receivership and to vacate the same, because they pertain only to the propriety of the court's later action continuing the receivership pendente lite; which, as stated, becomes an immaterial issue by reason of the fact that on the same day, on stipulation, the receivership was terminated by the issuance of the stipulated injunction.

Directing our attention, then, to the question of the validity of the ex parte order of July 16, 1940, appointing the receiver, it may be stated generally that the granting of such orders rests in the sound discretion of the trial court, in the exercise of which it must be governed necessarily by the situation as it is presented and appears to the court at the time of making the order. Here, according to the allegations of the verified complaint, the condition of the corporation and the operation of the business, at the time the complaint was filed, was and for some time prior thereto had been in a chaotic state. Speaking generally, it appeared from said allegations that certain lawsuits were then pending wherein restraining orders had been issued which prevented the holding of any stockholders' meetings and completely deadlocked the corporate directorate so that the corporation, as such, had ceased to function; that for nearly two years Mitchell had been in control of the business without legal authority, and that he had been and was then committing certain illegal acts in connection with the operation of the business, which, if the allegations were true, would inevitably ruin the business of the corporation; all of which was being done, so plaintiff

alleged, for the purpose of wrongfully and fraudulently compelling him to sell his stock for a price far less than its true value.

The complaint is lengthy, covering approximately 50 typewritten pages of the transcript; consequently reference will be made herein only to the more important allegations thereof. With respect to stock transactions it was alleged that on or about the month of July, 1938, Mitchell entered upon "a fraudulent and wrongful scheme" to obtain Peter's stock; that in pursuance of such scheme he illegally caused certain stock certificates to be cancelled, transferred and reissued; that thereupon he assumed control of the corporation and its business and purported to discharge Peter and thereafter refused to pay his salary; that on March 22, 1939, Peter brought suit to establish his claim to the additional 59 shares of stock and obtained a restraining order against the holding of any stockholders' meeting; that two days afterwards Mitchell commenced a suit to prevent the holding of a directors' meeting and obtained a restraining order to that effect. It was further alleged that after Mitchell illegally took control of the corporation and the operation of its business he caused false resolutions to be sent to the banks so that they would no longer cash Peter's checks as vice-president and treasurer of the company; that he instructed the clerks to inform anyone phoning the stores that Peter was no longer connected with the business; that he informed the wholesalers and jobbers that Peter was no longer connected with the stores, advised the employees they should not follow directions from Peter and encouraged them to pick fights with Peter; that he employed a watchman whose sole duty was to watch Peter and pick fights with him; that he discharged the women cashiers and employed men in order to prevent Peter from balancing the cash receipts of the stores; that he withdrew the cash receipts from the Powell Street store on November 24, 1939, in order to prevent Peter from performing his duties as treasurer of the company; that he changed the locks on the warehouse to keep Peter out; that he threatened to make Peter's interest valueless by payment of bonuses and increasing his own salary unless Peter would accept $4,000 for his stock; that he told Peter he contemplated certain capital expenditures which would prevent the payment of dividends; that he refused Peter's right to examine the books and changed the combination on the safe after Peter

had made an examination by means of passkeys, and that it then became necessary for Peter to have the safe drilled and new keys made; that Mitchell engaged a public accountant to audit the books and agreed to furnish Peter with a copy of his report, but failed to do so; that he removed certain books from the office of the corporation and refused to tell Peter where they were; that he prevented and failed to assist the accountants employed by Peter in the making of an audit; that he prevented the making of an inventory and compelled the auditors to leave the premises, and that he furnished false statements of profit and loss. Continuing, Peter alleged that he commenced an action to compel the inspection of the books and for an audit on April 13, 1940, but Mitchell failed to appear in compliance with the order to show cause; that auditors were appointed by the court, and that Mitchell impeded and delayed the making of the audit; that the audit showed that the books of the corporation were inadequate, lacking in accounting control, and that Mitchell had caused the inventory to be understated in the sum of $21,535.97 in the financial reports of the business for the year ending 1939.

With reference to acts of malfeasance, the complaint alleged that in October of 1938 Mitchell claimed to be a creditor of the corporation in the sum of $8,770, which he admitted was not a true liability; that in August, 1939, he increased his salary to $125 a week with an expense account of $30 a month; that he attempted to get the bookkeeper to prepare a false inventory; furthermore, that he changed the accounting control so that there was no control on merchandise received; that he appropriated the property and assets of said corporation to his own use, and had paid certain personal expenses out of corporate funds.

It was further alleged that Mitchell accepted unlawful rebates from transportation companies, resulting in three suits against the corporation; that he accepted unlawful rebates from wholesalers and jobbers; that he had refilled liquor bottles, affixed internal revenue stamps thereto and resold the contents; that numerous physical encounters took place between Peter and Mitchell, and that in September, 1939, Mitchell threatened Peter's life.

The complaint then alleged that the foregoing acts were fraudulent and dishonest and constituted a gross abuse of discretion and that Mitchell should be removed as a director;

that ill-feeling, dissension, hatred, mutual hostility and distrust had arisen and existed in the board of directors; that by reason of the discharge of Peter and certain employees it was impossible for the corporation to carry on its business with advantage to its stockholders and said corporation had lost a large part of its good will, and its gross business had decreased in the hands of Mitchell in the sum of over $50,000 from January to April, 1940, and that the business was being mismanaged and would be substantially impaired and diminished unless a receiver was appointed.

As held in *Lent* v. *H. C. Morris Co.*, 25 Cal. App. (2d) 305 [77 P. (2d) 301], the appointment of a receiver "may be made 'ex parte' and without notice if the 'imperative necessity' or emergency is shown in the petition or supporting affidavits. (§ 566, Code Civ. Proc.; *Real Estate Associates* v. *Superior Court*, 60 Cal. 223, 227; *Nichols* v. *Nichols*, 135 Cal. App. 488, 492 [27 P. (2d) 414]; *Huellmantel* v. *Huellmantel*, 124 Cal. 583, 589 [57 P. (2d) 582].) Since the power to appoint 'ex parte' lies in the superior court, the question on appeal is not one of jurisdiction, but of error, and, as such, is limited to the inquiry whether the trial court abused its discretion. (23 R. C. L., pp. 39, 40; *Sunset Farms, Inc.* v. *Superior Court*, 9 Cal. App. (2d) 389, 405 [50 P. (2d) 106]; *Anderson* v. *Anderson*, 124 Cal. 48, 56 [56 Pac. 630, 57 Pac. 81, 71 Am. St. Rep. 17].) An appellate court is never justified in substituting its discretion for that of the court sitting nisi prius. Its power is limited to the determination whether there has been such an abuse of discretion that it has resulted in a miscarriage of justice. (Const., art. VI, § 4½; *Davies* v. *Ramsdell*, 40 Cal. App. 432, 433 [183 Pac. 702]; *Sunset Farms, Inc.* v. *Superior Court*, *supra*.)" And beyond question a court of equity has power to appoint a receiver in a stockholder's suit for the purpose of preserving the assets of a corporation and prevent irreparable loss or injury pending suit. In Ballantine on Private Corporations (1927 ed., § 253) the rule is stated thus: "Under statutes in some states, and independently of any statutes in others, the court may appoint a receiver in a stockholder's suit if the directors and majority of the stockholders are so managing or disposing of its business or assets in their own interest that they will probably be lost or destroyed before a decree can be rendered, or where there are such dissensions within the corporation that its business cannot be honestly

or properly managed, or if for any other reason it clearly appears to the court that the appointment of a receiver pending the suit is necessary to preserve the assets of the corporation, and protect the rights of the complaining stockholders." The same doctrine is stated more definitely in California Jurisprudence (vol. 6A, p. 1535) as follows: "Internal dissensions deadlocking the corporation or frustrating it or threatening its purposes and objects, official breaches of trust, mismanagement and waste, are generally regarded as grounds, according to usages of equity, for a receivership to protect rights. Therefore, where the proceeding is not directed toward closing the affairs of the corporation or to dissolve it, but is merely directed against the individual directors whom it is sought to remove and to place the assets of the corporation in safe hands, the unfaithful directors having abandoned their trust, it is proper for the court, through the agency of a receiver, to take charge of the property, if necessary for its preservation, pending proceedings for the removal of the directors. Dissensions, or honest differences of opinion, which result in making it impossible for the corporation to carry on its business to advantage, or to carry it on at all, are sufficient to invoke the action of a court of equity." (See, also, Pomeroy's Equity Jurisprudence, 4th ed., §§ 1537, 1541, 1543, 1545; *Boyle* v. *Superior Court*, 176 Cal. 671 [170 Pac. 1140].) "These receivers are not appointed," says the court in the case last cited, "to close up the affairs of a corporation, to work its dissolution, but to preserve its properties, and, where possible, continue its corporate functions."

Under the foregoing principles it would seem clear that in the present case there is no justification for holding that the trial court abused its discretion in appointing the receiver ex parte. By the allegations of the complaint it was represented to the court that by reason of the restraining orders theretofore issued the board of directors of the corporation was not able to function as such, nor the stockholders to meet; that the corporation was being managed illegally and dishonestly by one of the three directors who was the majority stockholder; that the other stockholder claimed to be entitled to an equal share of the stock; that the one who had complete control of the management of the corporation was raising his own salary, using the employees, the premises, and the equipment for personal purposes and paying for such out of corporate funds; that he had refused access to or inspection

of the books; that he had changed the accounting control; that he was in difficulties with the Railroad Commission for taking rebates from transportation companies; that he was refilling liquor bottles, which illegal act could result in the loss of the corporation's license to do business at all. Under these circumstances, and also in view of all other pending litigation which had not been disposed of, it would seem that the trial court was justified in appointing a disinterested party as receiver to control the business of the corporation, to preserve its assets, and protect the rights of the complaining stockholders, pending the hearing of the order to show cause whereby the court would determine whether the receivership should continue.

█ Appellants contend that the court has no jurisdiction to appoint a receiver ex parte of a solvent, going corporation, where there is no showing of irreparable injury or drastic emergency. However, it is well settled that a court of equity has inherent power in a proper case to appoint a temporary receiver for a solvent, going corporation, at the instance of stockholders, on the ground of fraud or gross mismanagement, or where there are such dissensions in its governing body as to make it impossible for the corporation to carry on its business to advantage. This power will not be exercised in a doubtful case; and the remedy being a drastic one, only in case of an urgent necessity, where there is no other adequate remedy, will a receiver be appointed for such corporation. (*Boyle* v. *Superior Court, supra; Golden State Glass Corp.* v. *Superior Court,* 13 Cal. (2d) 384 [90 P. (2d) 75]; and see note, 43 A. L. R., p. 242.) But the pending emergency and the necessity for the appointment are matters which the trial court is called upon to decide (*Lent* v. *H. C. Morris Co., supra*); and in the present case we do not find such an abuse of discretion in appointing the receiver as would warrant this court in setting the order aside, but on the contrary, the facts and circumstances amply justified the trial court's action.

█ Appellants also argue that other adequate remedies were available to protect the interests of the plaintiff, and that both prior to and after the commencement of the present action he filed several other suits and requested and obtained such remedies; that therefore the court exceeded its jurisdiction in appointing a receiver. The record shows, however, that some of the important litigation instituted by plaintiff prior to the commencement of this action had not been finally

determined at the time the ex parte order herein was made. It was a question for the trial court to decide, therefore, whether in view of the serious and numerous charges of misconduct and illegal acts made in the complaint, a temporary restraining order would give adequate protection; and the trial court having decided that question in the negative, and its decision being supported by substantial legal authority, it is controlling on appeal.

It should be here stated in fairness to the defendant Mitchell L. Misita that at the hearing of the subsequent motions to continue and to vacate the receivership, which resulted in the making of the order of August 10, 1940, evidence was introduced by way of affidavit and oral testimony in refutation of most of the allegations of the complaint, and particularly those charging Mitchell with illegal, fraudulent and dishonest conduct in operating the affairs of the company; furthermore, that it appears from the evidence introduced at said subsequent hearing that at the time the verified complaint in the present action was filed, the two lawsuits brought respectively by Peter and Mitchell to restrain the holding of stockholders' and directors' meetings were consolidated and had been tried in another department of said court, and an order made for judgment in favor of Mitchell, but that the judgments had not been entered until after the appointment of the receiver ex parte on July 16, 1940. As already pointed out, however, the showing made at said subsequent hearing of the order to show cause, which resulted in the making of the order of August 10, 1940, cannot be properly considered in determining the question of whether three weeks prior thereto and on July 16, 1940, sufficient legal grounds appeared to the trial court to warrant the granting of the ex parte order appointing the receiver pending the hearing and determination of the order to show cause.

The orders appealed from are affirmed.

Peters, P. J., and Ward, J., concurred.

A petition for a rehearing was denied September 30, 1942, and appellants' petition for a hearing by the Supreme Court was denied October 29, 1942. Carter, J., voted for a hearing.