[Civ. No. 14147.   Second Dist., Div. Two.   Oct. 29, 1943.]

NATHAN A. MOORE, Respondent, v. SETH OBERG et al., Appellants.

Walter G. Danielson for Appellants.

Alford P. Olmstead and John N. Hurtt for Respondent.

MOORE, P. J.—Defendants appeal (1) from an ex parte order appointing a receiver and (2) from the order confirming such appointment. The errors assigned are (1) that there was no property in danger of "being lost, removed or materially injured"; (2) that in issuing the order to show cause the court cast upon defendants the "burden of proving the impropriety of the initial action"; (3) that the court con-

sidered affidavits filed by plaintiff at the time of the hearing; (4) that the court abused its discretion by confirming the appointment.

The complaint and the affidavits established that prior to June 8, 1942, the Obergs had been contractors in doing construction work. Seth and Lars Oberg had operated as a copartnership while Oscar had performed alone or collaborated with the firm. On that day, by a tripartite writing, Oscar, the firm and plaintiff entered upon a joint venture referred to by counsel as a partnership to do the "Laguna Dominguez Channel Job." On July 3 by similar instrument they agreed to do the "Dominguez Channel Bridges Job," and on August 15, 1942, they contracted to do the "Victorville Army Flying School Job." Each agreement made provision for the equipment and the share of the finances to be supplied by each of the three parties. On the Victorville job plaintiff was to receive a specified rental per hour for the use of his carryall, bulldozer and motorgrader. At a subsequent date a fourth tripartite contract was made for the construction of an airport at Desert Center, California, for $700,000 and it required that all of plaintiff's equipment used there be maintained at the expense of the joint venture.

All four jobs were completed. On December 23, plaintiff demanded (1) a payment in the sum of $25,000 on account of the $45,000 claimed to be due him on the rental of his equipment, and (2) for an accounting. Both demands were rejected with the statement that there were no funds with which to pay. At that time, however, there was $144,000 in the bank account of the joint venture out of which plaintiff might have paid the rentals due himself as well as have shared to the extent of his profits. But according to the averments and implied findings within five days it had been fradulently withdrawn and redeposited as follows: (1) to Oberg Bros., $10,000; (2) to Oscar, $20,000; (3) to Oberg Bros. by Oscar Oberg, $105,000. Withal, the bank would not recognize plaintiff's interest in the funds. While the profits and contributions of defendants did not amount to a small part of $135,000 there were obligations of the joint enterprise unsatisfied besides the rentals due plaintiff. This act of defendants injured the business and impaired the credit of the partnership. Plaintiff was excluded from the management of the business while all the records of receipts and disbursements were in the possession of defendants who denied plaintiff access thereto.

Moreover, as the court further determined, defendants confused and intermingled the funds from the several jobs for the purpose of enhancing their own profit and of cheating plaintiff. They so entered the credits and charges as to make the defendants' share of the profits appear larger in those jobs wherein their true share is greater and to appear less in those in which their actual profits are smaller. In addition to the moneys of the joint enterprise so removed from the bank account a sum in excess of $100,000 is due from the federal government in payment for the performance of work done by the joint venture. Upon such findings the court concluded that a receiver is necessary to possess the moneys, property and accounts receivable for the reason that if defendants are allowed to collect the money due and to convert the joint assets into money the funds and properties of the joint venture will be lost and because of defendants' financial irresponsibility plaintiff will be irreparably injured.

■ (1) Appellants contend that the court prejudicially erred in appointing a receiver ex parte in that there was no property in danger of "being lost, removed or materially injured." (Code Civ. Proc., sec. 564.) They cite numerous authorities to the effect that a receiver cannot be appointed in the absence of a showing of irreparable injury. (*Fischer* v. *Superior Court*, 110 Cal. 129 [42 P. 561]; *A. G. Col Co.* v. *Superior Court of Santa Clara County*, 196 Cal. 604 [238 P. 926]; *Tyler* v. *Park Ridge Country Club*, 103 Cal.App. 117 [284 P. 247]; *McCall* v. *McCall Bros. Co.*, 135 Cal.App. 558 [27 P.2d 648].) They argue that the only property involved was the books, the equipment, the money and the funds due from the United States; that there is no allegation that there is danger that the books will be removed or mutilated, or that there is a likelihood that the equipment will be removed, lost or injured. However, the complaint does in substance emphatically declare that by making improper entries in the books of account, by commingling the funds and by excluding plaintiff from a knowledge of the accounts, defendants will cheat plaintiff. Aside from references to the books and equipment, the clandestine withdrawal from the bank account of the joint venture the sum of $144,000 and depositing it in such a manner as to defeat any attempt of plaintiff to use those funds was such a fact as might reasonably indicate to the court "that unless the defendants . . . be restrained from using the funds . . . the principal asset of the firm will be

dissipated and placed beyond the reach of plaintiff herein. . . ." Many phrases were framed by defendants to establish their claim that they had advanced $30,000; that if the complaint had alleged that fact and, in addition thereto, that the $105,000 deposit was "a trustee and joint control account," the court would have understood that the funds were in no danger of loss or dissipation.

With such contention we cannot agree. When a group of joint adventurers designedly sequesters so large an asset of the common fund and puts it wholly out of the reach of the sole remaining member of the associates it is not error for the court to issue an order to show cause and, at the same time, as a part of the ex parte order, appoint a receiver of the properties of the joint venture. Under such a showing of bad faith it was the duty of the chancellor so to protect the common fund as to insure a division thereof in conformance with the final judgment. This was accomplished temporarily by the ex parte order. ██ But that order appointing the receiver was a mere part of the order to show cause on a day specified why the temporary order should not be made permanent. It was effective only until the day of the hearing. It ceased to function as a temporary order at the moment of its confirmation and the later and permanent order became controlling, and, of course, the only appealable order. (*Baumann* v. *Bedford,* 18 Cal.2d 366, 368 [115 P.2d 437].)

██ At that hearing plaintiff presented the testimony of three witnesses and defendants presented that of five witnesses, all by affidavits. The ultimate fact to be found was whether the protection of the interest of plaintiff required the appointment of a receiver. This had to be determined by a preponderance of the evidence. Whatever the conflict between the proof offered by plaintiff and that offered by defendants it was resolved in favor of the former. In view of the behavior of defendants as determined by the court, we find no error in the court's extending its protective power to the assets of the joint enterprise by the confirmation of the appointment of the receiver.

██ (2) Appellants contend that they were aggrieved by reason of the effect of the order to show cause in casting upon them the burden "to prove the appointment was improvident." There are two answers to this assignment. (1) The order to show cause did not shift the burden. It was only a temporary order and served merely as a notice of motion and a citation to the defendants to appear at a designated

time to show cause why the motion should not be granted. (*Difani* v. *Riverside County Oil Co.*, 201 Cal. 210, 213 [256 P. 210]; *McAuliffe* v. *Coughlin*, 105 Cal. 268, 270 [38 P. 730].) At the hearing both sides presented their evidence and the court decided in favor of the preponderant proof. There is nothing to indicate that the court ignored the general rule requiring the plaintiff to establish his case. ■ (2) But if defendants had any legal grounds why the order to show cause should be dismissed other than those stated in their affidavits and argument, it was incumbent upon them to state such reasons at the hearing. It is the general rule that the parties to a proceeding on an order to show cause will not be permitted to withhold objection to an order made in the course of the proceeding until the appeal and there raise it for the first time. (Sec. 434, Code Civ. Proc.; *Chalta* v. *Biller*, 212 Cal. 745 [300 P. 821].)

■ (3) Defendants' contention that plaintiff's affidavits should not have been read by the court on the return day of the order to show cause suggests a novel doctrine. The very purpose of such a hearing is to try *in limine* the issues raised by the complaint. In such a proceeding the plaintiff may always meet the affirmative evidence of the defendant with affidavits reciting details to such extent as may be deemed reasonable by the court to the end that it may derive a satisfactory determination. To deny such a privilege would be a strange occurrence incompatible with judicial thoroughness. By exploring all affidavits filed herein the court was enabled to perceive that the behavior of the defendants required the appointment of a receiver. Whether defendants had any legal basis for objecting to the court's consideration of the reply affidavits does not appear. If there had been any reason for such objection it should have been stated at the hearing. (*Chalta* v. *Biller, supra.*)

■ (4) Finally, where the evidence is conflicting or where the propriety of an appointment based upon the uncontradicted evidence is doubtful, the question of the appointment of a receiver is addressed to the sound discretion of the court to be "exercised upon all of the facts." (*Breedlove* v. *J. W. & E. M. Breedlove Ex. Co.*, 56 Cal.App.2d 141, 143 [132 P.2d 239].) So broad is the discretion of the trial judge that his order based upon facts concerning which reasonable minds might differ with respect to the necessity for the receivership will not be reversed. We cannot substitute our

conclusion for that of the trial court made upon sufficient evidence even if we should be of the opinion that there was no danger of the loss or removal of, or other irreparable injury to the assets of the joint venture. To justify our interference with the order confirming the appointment herein, it must be made clearly to appear that the order was an arbitrary exercise of power. (*Davies* v. *Ramsdell*, 40 Cal.App. 432 [183 P. 702]; *Fox* v. *Flood*, 44 Cal.App. 786 [187 P. 68]; *Misita* v. *Distillers Corp. Ltd.*, 54 Cal.App.2d 244 [128 P.2d 888]; *Sunset Farms, Inc.* v. *Superior Court*, 9 Cal.App.2d 389 [50 P.2d 106]; Const., art. VI, sec. 4½.) In the case of *Hampton* v. *Rose*, 3 Cal.App.2d 167 [39 P.2d 447], the facts fairly parallel those before us. Plaintiff there had a contract for a lease on premises which he would contribute to the proposed corporation and defendant would furnish his going business operating there with its furniture, fixtures, $1,300 cash, etc. After plaintiff had procured the lease in both names, Rose took possession, excluded plaintiff, appropriated the profits to his own use, declined to transfer the business to the corporation and refused an accounting. Upon such a showing there was no question of the propriety of the appointment of the receiver.

In the instant case it is not clear that the chancellor abused his discretion. While defendants had contributed $30,000 to the joint enterprise they withdrew that sum as though it had been a loan and as though they had an authorization from plaintiff to take it. Placing $105,000 of the joint venture money in a bank account to which plaintiff had no access evidenced bad faith and warranted the trial court in extending the arm of equity to the protection of him whose rights had been scorned by those in whom he had placed his confidence. The withdrawal by defendants of $144,000 from the bank account and their depositing it so as to deprive plaintiff of his right to check against it was not wholly relieved of its vice by the fact that "joint control" thereof was granted a bonding company. There was no prior agreement to place the joint venture funds under the control of a third party. Neither was it conclusive against the appointment of a receiver that there was no "going business." The estate of the joint venture is immense and plaintiff's share is a fair fortune. By a stroke of the pen an ill-advised partner might deprive plaintiff of substantial property rights. That the court concluded that such event was probable warranted the measures taken.

■ But aside from the probable loss to be suffered by plaintiff the court was authorized to appoint a receiver ''in an action . . . between partners or others jointly owning or interested in any property or fund . . . where it is shown that the property or fund is in danger of being lost, removed or materially injured.'' (Sec. 564, Code Civ. Proc.). On the showing made at the hearing the court determined that the appointment should be made. The facts impliedly found from the complaint and the affidavits establish an attempted scheme to deprive plaintiff of his property and of the advantages gained. While the extensive affidavits filed by defendants present a picture quite different from that found, yet the court exercised a judicial privilege in adopting the facts as presented by plaintiff. The partnership created was effectually at an end. The parties had become associated for the purpose of accomplishing four definite ventures. Not only had those aims been wholly consummated, but the partners had become at variance. The Obergs were bitter in their enmity towards plaintiff and he cordially distrusted them. No one could collect, conserve and distribute the estate to the satisfaction of the partners save only the court.

■ The contention that the court committed prejudicial error in refusing to accept at the hearing defendants' proposed stipulation is devoid of merit. Its terms were that the court should (1) discharge the receiver, (2) direct all joint venture money to be deposited in the trustee account, and (3) permit no withdrawals therefrom without order of court. It was not obligatory upon the court to accept or act upon such proposal. Stipulations are to be made by litigants, not by one litigant and the court. Neither is it the duty or the function of a court to require one of the parties to stipulate with his adversary. The contents of the document served only as an argument to the court to enter an order embracing the terms suggested.

The appeal from the ex parte order is dismissed.

The order confirming the appointment of the receiver is affirmed.

Wood (W. J.), J., and McComb, J., concurred.

A petition for a rehearing was denied November 19, 1943, and appellants' petition for a hearing by the Supreme Court was denied December 27, 1943.